### DAVENPORT QUIGLEY EXPEDITION, Inc., v. CENTURY PRODUCTIONS, Inc., et al.

District Court, S. D. New York.
Feb. 19, 1937.

Krellberg & Fitzsimons, of New York City (Alfred S. Krellberg and Edward A. Sargoy, both of New York City, of counsel), for complainant.

Henry Pearlman, of New York City (Henry Pearlman, Maxwell E. Sparrow, and Percy Freeman, all of New York City, of counsel), for defendants.

HULBERT, District Judge.

Plaintiff sued in equity to restrain infringement of a moving picture film copyright entitled "Jango" and retitled "Ubangi."

On and prior to February 28, 1929, Daniel Davenport was a citizen of the Dominion of Canada and domiciled in the city, county, and state of New York. With two European scientists he entered upon an expedition into the African jungle in 1925 to make a study of wild animals in their lair and also to experiment upon and study the tsetse fly. Davenport was furnished by Nathan Braunstein with the necessary raw stock material for the purpose of making moving picture films upon said expedition. These films, aggregating about 6000 feet, were received from Davenport and cut and assembled by Braunstein, together with about 2,000 feet of additional film consisting of photographs which had been ·taken by one Major Dugmore, a London explorer and purchased by Braunstein from a New York "library" or film agency. Under the title of "Jango," these combined films were first exhibited by Davenport after his return from Africa on February 28, 1929, and in addition to the title, bore the words "Copyright ·1929, Daniel Davenport," which the plaintiff

claims constituted the first publication thereof by him *under the existing copyright law.*

On or about March 28, 1929, Davenport executed and delivered a bill of sale to Braunstein whereby in consideration of the sum of $500 he bargained, sold, granted, and conveyed "all my right, title and interest in and to a certain negative of a motion picture film dealing with animal study in Africa, said negative being six reels in length, and also one positive of the same negative film, together with the cases containing same."

It will be noted that no reference was made *to the copyright.*

Thereupon the plaintiff was incorporated under the laws of the state of New York on April 17, 1929, and Braunstein made an offer in writing to convey said films *and the copyright thereof* to the plaintiff, which offer was recommended at the first meeting of the incorporators and accepted at the first meeting of the directors, attended in each instance by Davenport and Braunstein, who were elected the president and vice president, respectively, of the plaintiff.

On January 7, 1930, Braunstein delivered two copies of film, consisting of nine reels, together with an application, to the Register of Copyrights at Washington, D. C., and received a certificate of copyright stating that registration had been made under entry class M, No. 1039, in the name of Davenport Quigley Expedition, Inc.

Upon the trial, Braunstein testified that the two prints so filed had been returned. There is now no requirement that the copyright office either retain or return to the copyright owner the deposited copies of moving picture films, but perhaps because of lack of storage facilities or potential fire hazards it is the practice of the Copyright office to return them, and it is authorized to do so by Act of March 3, 1933, c. 202, § 1, 47 Stat. 1431. See 17 U.S.C.A. § 12 note.

It was testified by Braunstein that both of the returned prints and the so-called lavender print from which they were made were put in service, practically worn out, and subsequently destroyed, and that the original was, at the time of the trial, in Berlin, Germany, subject to litigation there, but he produced eight reels of

film which he testified to be an exact copy of the original and they were projected during the course of the trial upon a screen for the information of the court. He also testified that 20 scenes represented in said film had been exhibited by the defendant Century Productions, Inc., in various theatres, including the Century Theatre in New York, on or about November 25, 1932, under the copyright title of the "Jungle Killer."

In another action in this court (19 F. Supp. 30) in which one Patterson was the plaintiff, the defendants Century Productions, Inc., and Cummins, were enjoined from showing certain other portions of the "Jungle Killer" which the plaintiff does not claim constituted an infringement of the film "Jango," but to induce this plaintiff not to stop the showing of the "Jungle Killer" completely, the defendant Cummins, president of the Century Productions, Inc., agreed to eliminate the scenes objected to bv the plaintiff, some of which were produced upon and also projected during the trial.

It appears that the plaintiff, in advertising the public showing of "Jango," included photographs taken from a book copyrighted by Dugmore in 1910 and which was produced upon the trial, from the shelves of the New York Public Library. It was contended by the defendants that the use of said photographs, as well as the so-called Dugmore film included in the picture entitled "Jango" was a representation to, and might be regarded by those invited and who came to witness "Jango," as photographs taken by Davenport, but there is no claim of infringement of these films by the defendants.

On the other hand, it is clearly established by the evidence in the case, that the defendants Century Productions, Inc., and Samuel Cummins, purloined the scenes in question from the plaintiff's film. The defendant attempted to show by the testimony of one Alexander that title to certain of the scenes eliminated from the "Jungle Killer" upon plaintiff's claim of infringement had been acquired from Alexander's production of "Ingagi." It developed that Alexander and Congo Pictures, Limited, with which he was connected, had utilized photographs of "Darkest Africa" allegedly purchased from Lady McKenzie in making "Ingagi" in September, 1929, released at San Diego, Cal., February 21, 1930, but Alexander admit-

ted, on cross-examination, that in a suit brought in this court, Lady McKenzie's son had recovered a judgment against his company and himself for $150,000 for infringement.

To establish title to other scenes in the "Jungle Killer" claimed by the plaintiff to constitute infringement of its film "Jango," the defendants put in evidence a bill of sale purported to have been executed in New York at a time when the testimony indicated that the vendor was in California.

The defendant Cummins entered into a contract with Carveth Wells, explorer and author, to synchronize, edit, and furnish the dialogue for the "Jungle Killer" film, as well as for the personal appearance of Mr. Wells and Zetta Robard, his wife. Mr. Wells testified that after he had been shown a collection of motion picture film which Cummins claimed to have purchased showing an exploration in Africa, Mr. Wells called his attention to the fact that many of the scenes were familiar and known to him to have been taken by various explorers in other countries, as well as in Africa, and that all film to which Mr. Wells took objection must be deleted. Thereupon, Mr. Cummins requested Wells to lend him a copy of his own picture "Hell Below Zero" so that he might get some ideas for the arrangement of the "Jungle Killer." Mr. Wells lent him the film requested and subsequently discovered that Mr. Cummins had lifted certain scenes from the Wells' picture and incorporated them in his own, without Wells' knowledge or consent.

I dismiss entirely as incredible upon the proof, and as unfounded in fact, the claim of the defendants Century Productions, Inc., and Cummins, of a valid title to the plagiarized scenes.

The defendants, however, challenge the plaintiff's contention that no written assignment of his copyright was made by Davenport to Braunstein. Plaintiff sought to meet this issue by offering parole testimony because of the alleged ambiguity of the language of the bill of sale. Such testimony was not excluded in disregard of the exception to the rule that persons not parties to a written instrument may show that it does not clearly state the agreement between the parties thereto. Root v. John T. Robinson Co. (D.C.) 55 F.

(2d) 303, 9 U.S.Patents Quarterly 266. The issue here involved is whether there must be proof of an assignment *in writing*.

The existing copyright statute made a very radical change in our copyright law and practice. Previous thereto it was necessary to file an application for a copyright and then publish, now the law requires the publication and the filing of the application for registration within a reasonable time thereafter.

■ Therefore the essence of copyright is the publication with notice of copyright. Section 9, title 17 U.S.C.A. National Cloak & Suit Co. v. Kaufman (C.C.) 189 F. 215; Universal Film Mfg. Co. v. Copperman (D.C.) 212 F. 301.

Registration is merely a means of perfecting it. Section 10, title 17 U.S.C.A.

■ No specific time for registration and deposit is provided and the validity of the copyright is not affected by failure to register except that an action cannot be maintained for infringement until that is accomplished. Section 12, title 17 U.S.C.A.

Under section 55 of the act (17 U.S.C.A. § 55), the certificate of copyright registration is *prima facie* evidence of the facts therein stated. That is, authorship, domicile of author, title of the work, date of the publication, date of the deposit of the two copies, and description of the work as well as the registration of the copyright.

But section 41 of the act (17 U.S.C.A. § 41) provides: "The copyright is distinct from the property in the material object copyrighted, and the sale or conveyance, by gift or otherwise, of the material object shall not of itself constitute a transfer of the copyright, nor shall the assignment of the copyright constitute a transfer of the title to the material object; but nothing in this title shall be deemed to forbid, prevent, or restrict the transfer of any copy of a copyrighted work the possession of which has been lawfully obtained."

And section 42 (17 U.S.C.A. § 42) reads: "Copyright secured under this title or previous copyright laws of the United States may be assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the copyright, or may be bequeathed by will."

■ It is conceded that assignment of the literary product before publication and before copyright would entitle the assignee to publish and register, but when the right of the assignee depends upon publication before assignment, the assignment must comply with the statutory requirements.

■■ The learned counsel for the plaintiff called attention to the case of Pathe Exchange, Inc. v. Edmund,[1] incidentally incorrectly cited, clerk's file E62-28, in which Circuit Judge Mack, sitting as a District Judge in this District, held the title to physical material of the prints of a film did not carry any part of the copyright and wherein it appears that the owner of the film felt that the film had outlived its original purpose and had been sold to a junk dealer from whom the defendant obtained it and sought to make commercial use of it, whereas, in the instant case, it is contended by the plaintiff that an assignment must necessarily be implied by operation of law to give the bill of sale executed by Davenport to Braunstein any substantial effect at all. But construing the language of sections 41 and 42, together, the court is forced to a contrary conclusion.

With great reluctance the court makes its disposition of this case upon a technicality, but it is the sole and exclusive power of the Congress to legislate and the court must construe the statute as it was enacted. If the plaintiff had no such copyright, in the language used in Public Ledger Co. v. Post Printing & Pub. Co. (C.C.A.) 294 F. 430, 436, "it could recover nothing on account of that publication, and the burden was on the plaintiff to prove a valid copyright in itself," a burden which it has not sustained.

For the reasons stated, the bill must be dismissed. No costs.

---

[1] No opinion filed.