### PATTERSON v. CENTURY PRODUCTIONS, Inc., et al.

District Court, S. D. New York.
March 25, 1937.
Interlocutory Decree April 21, 1937.

Krellberg & Fitzsimmons, of New York City (Alfred S. Krellberg and Edward A. Sargoy, both of New York City, of counsel), for complainant.

Henry Pearlman, Maxwell E. Sparrow, and Percy Freeman, all of New York City (Henry Pearlman, of New York City, of counsel), for defendants.

LEIBELL, District Judge.

The complainant, Frederick B. Patterson, while on a hunting trip in Africa between April and November, 1927, took moving pictures of wild animal scenes on some 15,000 feet of film. The films were later developed by the Eastman Kodak Company. About December, 1927, complainant engaged experienced men to cut and edit the film with appropriate titles. There was added to the film a map of Africa on which was traced the course of complainant's journey during which the animal scenes were filmed. The editing of the film required several months. When completed, it comprised 6,000 feet of film on 8 reels and was given the title "Shooting Big Game with a Camera." Part of the title of the film contained the notice "Copyright 1928 by F. B. Patterson, Pres. of National Cash Register Co."

On April 12, 1928, complainant filed with the librarian of Congress an application for registration of copyright of the motion picture under section 11 of the Copyright statute (as amended, 17 U.S.C.A. § 11). The application gave the "title" of the picture as "Shooting Big Game with a Camera" and its "description" as "a faithful representation pictorially of the incidents and hazards encountered on a hunting trip in Africa." The prints inclosed with the application were "two sheets of photographic paper having six different sections of the film of the above entitled motion picture reproduced thereon." Complainant received from the Copyright Office a certificate of Copyright Registration certifying "that the title, description, and two prints taken from different sections of the complete Motion Picture Not a Photoplay and not reproduced in copies for sale" had been deposited in the office under the provisions of the act and "that registration of a claim to copyright" for the first term of 28 years had been duly made in the name of complainant; that the "title of motion picture not a photoplay" was "Shooting Big Game with a Camera," by Frederick Beck

Patterson, of the United States, and that the title, description, and 6 prints were received April 12, 1928. The certificate bears the signature of the Register of Copyrights and the seal of the Copyright Office.

Some time between February and April, 1928, the film was exhibited to about 24,000 employees and their families at the National Cash Register Company at Dayton, Ohio, of which the complainant was president. No admission was charged at those exhibitions. About a year after the copyright was registered, copies of the film were loaned, without charge, to religious, educational, and social organizations, principally through the agency of the Y. M. C. A. on the express condition that they in turn would not charge any admission at any exhibition of the film. The original negative was kept in Dayton. There were 6 or 8 positive films, some of the standard 35 millimeter size and others 16 millimeters for the smaller sized projection machines.

In some way the defendant Cummins illegally got possession of one of complainant's positive prints in 1932 and at the direction of Cummins a duplicate negative of a number of the scenes on complainant's film was made at the laboratory of the Empire Laboratories, Inc., another defendant. The positive film, from which Cummins had the duplicate negative made, contained the copyright notice of Patterson. Between 1,000 and 1,500 feet of wild animal scenes, pirated from complainant's film, were incorporated in a film entitled, "The Jungle Killer," which Cummins caused to be copyrighted on October 3, 1932, in United States Copyright Office in the name of Century Productions, Inc., as "a motion picture not a photoplay reproduced in copies for sale" under section 9 of the Copyright statute (17 U.S.C.A. § 9), claiming August 15, 1932, as the date of publication. Century Productions, Inc., was a corporation owned or controlled by Cummins. He was one of its officers and directors. The Empire Laboratories, Inc., now in bankruptcy, was a corporation owned or controlled by the defendant Fiedler.

The film "The Jungle Killer" was exhibited at the Central Theatre in New York City in November, 1932. It was viewed by Patterson and the two experts who had edited and assembled Patterson's film "Shooting Big Game with a Camera." They made a list of the scenes of "The Jungle Killer" that were taken from F. B. Patterson's motion picture "Shooting Big Game with a Camera." The list covers more than two typewritten pages. Cummins was notified at once of the infringement of complainant's copyright and this action was started against the defendants on December 13, 1932. The offending film was seized by the marshal under a writ of seizure of this court and impounded. Later by stipulation the defendant Cummins was permitted to cut out and remove so much of the impounded film as did not infringe complainant's copyright. There was some testimony showing that he removed more than the noninfringing portions and further that in 1935 he sent to Europe ("by mistake," he says) a lavender print of the whole picture "The Jungle Killer." Cummins also admitted that the film had been exhibited in Cincinnati November 4, 1932, and in Columbus, Ohio, on November 11, 1932, prior to the showing in New York.

In another action in this court instituted by Davenport Quigley Expedition, Inc., against these same defendants, 18 F.Supp. 974, the plaintiff in that action claimed that these defendants had infringed its film "Jango" by purloining certain other scenes (not involved in this present action) and incorporating them in the film "The Jungle Killer." That case was tried in this court before Judge Hulbert who filed an opinion February 19, 1937, from which the following is quoted:

"To establish title to other scenes in the 'Jungle Killer' claimed by the plaintiff to constitute infringement of its film 'Jango,' the defendants put in evidence a bill of sale purported to have been executed in New York at a time when the testimony indicated that the vendor was in California.

"The defendant Cummins entered into a contract with Carveth Wells, explorer and author, to synchronize, edit, and furnish the dialogue for the 'Jungle Killer' film, as well as for the personal appearance of Mr. Wells and Zetta Robard, his wife. Mr. Wells testified that after he had been shown a collection of motion picture film which Cummins claimed to have purchased showing an exploration in Africa, Mr. Wells called his attention to the fact that many of the scenes were familiar and known to him to have been taken by various explorers in other countries, as well as in Africa, and that all film to which Mr. Wells took objection must be deleted. Thereupon, Mr. Cummins requested Wells to lend him a copy of his own picture 'Hell Below Zero' so that he might get some ideas for the

arrangement of the 'Jungle Killer.' Mr. Wells lent him the film requested and subsequently discovered that Mr. Cummins had lifted certain scenes from the Wells' picture and incorporated them in his own, without Wells' knowledge or consent.

"I dismiss entirely as incredible upon the proof, and as unfounded in fact, the claim of the defendants Century Productions, Inc., and Cummins, of a valid title to the plagiarized scenes."

Mr. Wells made a deposition to the same effect in this, the Patterson action. Likewise, in this present case the defendant Cummins claimed that he acquired title to the plagiarized scenes of Patterson's film by purchase of a film from a man named Chester in 1930. But the mechanic who assembled "The Jungle Killer" for Cummins testified that Cummins brought to the Empire Laboratories, Inc., prints of the elephant reel and the lion reel of the Patterson film which bore the Patterson copyright notice and that he worked on 6 of the reels from Patterson's film and made duplicate negatives therefrom at the request of Cummins. The witness also testified that he had seen the Chester film and that it was entirely different from the Patterson film.

■ The deliberate purloining of at least 1,000 feet of Patterson's film by the defendant Cummins and the Century Productions, Inc., was established beyond doubt. This was done in the laboratories of Empire Laboratories, Inc., on film furnished by the laboratory and with the aid of its employees who cut the negatives. The defendant Fiedler referred to the laboratory as his laboratory. During the trial I viewed some of the infringing scenes of "The Jungle Killer" and the corresponding scenes of the Patterson film "Shooting Big Game with a Camera." The duplication was apparent and the infringement was not thereafter really contested, the defendant Cummins falling back upon his assertion that the infringing scenes were part of the Chester film he had purchased in September, 1930. But the duplicate negative of the infringing Cummins moving picture was made on some film manufactured by the Eastman Kodak Company in 1931. Of course, defendant Century Production Company's registration of "The Jungle Killer" in August, 1932, gave it no rights under the copyright statute to a piratical composition. Ferris v. Frohman, 223 U.S. 424, 32 S.Ct. 263, 56 L.Ed. 492.

At the end of the trial I announced my decision on the issue of fact and held that this was a case of deliberate plagiarism. Defendants' attorney asked leave to submit a brief on certain questions of law which he contended barred complainant from successfully prosecuting this action. Defendants contend (1) that complainant registered his film as an unpublished work, and (2) thereafter published his film, and (3) did not deposit two complete copies of his film before the commencement of this action.

■ (1) Complainant's copyright registration was filed pursuant to section 11 of the Copyright Law (as amended, 17 U.S.C.A. § 11), on April 12, 1928, as a "motion picture other than a photoplay." The title, a description, and "two prints taken from different sections" of the complete motion picture were filed with the application for registration as required by section 11. Section 11 is entitled "Works not reproduced for sale." The last sentence of section 11 states, "But the privilege of registration of copyright secured hereunder shall not exempt the copyright proprietor from the deposit of copies, under sections 12 and 13 of this title, where the work is later reproduced in copies for sale." The film bore notice of complainant's copyright of 1928 from the time it was copyrighted. Prior to the registration of the motion picture by complainant under section 11, there had been no publication of the work. The exhibition of the motion picture by the complainant without charge to employee groups of the National Cash Register Company, of which plaintiff was president, was not a publication of the motion picture. The motion picture was an unpublished work and could properly be registered for copyright under section 11 in April, 1928. Universal Film Mfg. Co. v. Copperman (C.C.A.) 218 F. 577; Nutt v. National Institute, Inc. (C.C.A.) 31 F.(2d) 236.

■ (2) None of the acts of complainant with respect to the film in question constituted a "general publication" prior to the institution of the action in December, 1932. The permission which complainant granted gratis to certain religious, educational, and social organizations to exhibit these films in connection with their work without any admission charge was not a "general publication" that would constitute a dedication of the film to the public. It was at best a "limited publication," limited both as to the

exhibitors and as to the exhibition, the limitation on each being clearly defined. Werckmeister v. American Lithographic Co. (C.C.A.) 134 F. 321, 68 L.R.A. 591. This permission was well within the rights of complainant under section 11. Universal Film Mfg. Co. v. Copperman (C.C.A.) 218 F. 577.

There was no proof that complainant ever reproduced the film in copies for sale prior to the institution of this action in 1932. Patterson's film was not rented to exhibitors. There was no general publication of the film through the usual channels. Patterson's loan of the film without charge to certain religious, charitable, and educational organizations was so hedged round with conditions that the purpose of the author not to reproduce copies for sale or for rent and not publish it generally is clearly manifest. He evidently wished to retain unaffected by any commercialism, publication, or dedication his motion picture copyright as registered under section 11 of the Copyright Law. That was the status of the complainant's copyright when defendants infringed it in 1932. Complainant's right to recover for this infringement is clear. Lumiere v. Pathe Exchange, Inc. (C.C.A.) 275 F. 428.

■ (3) Only part of section 12 (as amended 17 U.S.C.A. § 12) is applicable to this case. The first part of that section in respect to the deposit of "two complete copies" relates to works where "copyright has been secured by publication of the work with the notice of copyright as provided in section 9." The pertinent part of section 12 is as follows: "or if the work is not reproduced in copies for sale there shall be deposited the copy, print, photograph, or other identifying reproduction provided by section 11 of this title, such copies or copy, print, photograph, or other reproduction to be accompanied in each case by a claim of copyright. No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this title with respect to the deposit of copies and registration of such work shall have been complied with."

The copies required to be deposited prior to the maintenance of any action for infringement of a motion picture copyright registered under section 11 is the deposit of the "two prints taken from different sections of a complete motion picture, if the work be a motion picture other than a photoplay" mentioned in said section 11. The deposit of those prints with the claim of copyright in April, 1928, when complainant registered his motion picture under section 11 was a full compliance with the requirements of the last sentence of section 12 "with respect to the deposit of copies and registration of such work." Complainant's right to maintain this action in December, 1932, for defendants' infringement, without first depositing two complete copies of the motion picture with the Register of Copyrights, is also clear. When this action was started in December, 1932, complainant had a copyright of his motion picture under section 11; he also had a right to recover under section 25 (as amended 17 U.S.C.A. § 25) for defendants' infringement of that copyright. Further complainant's right to maintain an action for the infringement under section 25 was not barred by any failure to comply with the conditions precedent "with respect to the deposit of copies and registration" under sections 11 and 12, because he had fully complied with those conditions as above indicated.

On April 7, 1933, complainant applied for a general copyright under section 9 (17 U.S.C.A. § 9) stating that the film was first published on April 5, 1933, and at the time of the second registration complainant filed "two complete copies of the motion picture." Complainant then received a certificate of copyright "of the motion picture (not a photoplay) named herein, reproduced in copies for sale on the date stated herein." Thereafter on October 13, 1933, complainant for a consideration granted the "Principal Distributing Corporation" a "nonexclusive right to the use of certain scenes and/or sequences of the motion picture entitled Shooting Big Game with a Camera" to be used in a motion picture serial entitled "Tarzan the Fearless." What was done in April, 1933, has no bearing on the issue in this case, except to show that when complainant finally decided to commercialize his motion picture and to publish it without any limitation and reproduce it in copies for sale or distribution, he reregistered his copyright under section 9, in compliance with rule 23 of the Copyright Office, and deposited two sets of the 8 reels comprising the entire motion picture.

I therefore must dismiss defendants' contention that complainant is without remedy in this action for the injuries sus-

tained as a result of defendants' plagiarism of complainant's copyrighted motion picture.

The complainant is entitled, as provided in section 25, to a decree enjoining and restraining further infringement of complainant's copyright by the defendants and directing that all infringing negatives, positives, and other copies of complainant's moving picture film be delivered up by defendants for destruction, and to an award for damages sustained by complainant due to defendants' infringement and to an accounting of the profits made by defendants from such infringement.

I will appoint a special master to pass on the damages and accounting unless the parties are ready to stipulate as to complainant's damages and defendants' profits from the infringement.

Complainant is entitled also to an allowance for attorney's fees (section 40 [17 U.S.C.A. § 40]) but that will be reserved until the coming in of the special master's report.

This opinion is filed as the court's findings of fact and conclusions of law on the case (Equity Rule 70½, 28 U.S.C.A. following section 723).

Submit, on notice, an interlocutory decree in accordance with this opinion.

## Interlocutory Decree.

The above-named complainant having filed on the 13th day of December, 1932, his bill of complaint and præcipe for subpœnas in this court, and subpœnas having been duly issued to defendants, and all defendants having duly appeared and answered the said bill of complaint, and a consent and order of discontinuance as to defendant Carveth Wells having been filed herein on the 5th day of April, 1934, and certain motion picture films having been seized by the marshal pursuant to an order by Judge Coxe for a writ of seizure filed herein on the 24th day of December, 1932, and the marshal's return on said seizure having been filed on the 24th day of December, 1932, and an order for a preliminary injunction pendente lite having been made by Judge Coxe and filed herein on the 23d day of December, 1932, and a further order for a temporary injunction against all defendants except Carveth Wells having been made by Judge Coxe and filed herein on February 10, 1933, and an amended bill of complaint having been filed herein pursuant to leave of the court on the 12th day of April, 1933, and an answer to said amended bill of complaint having been filed in behalf of all defendants other than said Carveth Wells, and this cause having come on for further and final hearing before Judge Leibell upon the evidence of all the parties hereto, and having been argued by counsel, and Judge Leibell having, after due deliberation, rendered an opinion No. 10467 filed herein on the 25th day of March, 1937, in favor of the complainant and against all the defendants herein, said opinion directing that it be filed herein as the court's findings of fact and the conclusions of law on the case in accordance with Equity Rule 70½, 28 U.S.C.A. following section 723, and further directing the submission, on notice, of an interlocutory decree in accordance with the said opinion, now, therefore, it is, upon consideration, ordered, adjudged, and decreed as follows:

1. That on April 12, 1928, the complainant Frederick Beck Patterson, while author, and proprietor of the motion picture film described in the bill of complaint herein and entitled "Shooting Big Game With A Camera," the same never having been theretofore published or reproduced in copies for sale, duly secured copyright therein for a first term of twenty-eight years, under the Copyright Law of the United States (Act of March 4, 1909, as amended, title 17, U.S.Code, § 1 et seq., 17 U.S. C.A. § 1 et seq.), as a motion picture other than a photoplay not reproduced in copies for sale, depositing or causing to be deposited with the Register of Copyrights, Library of Congress, Washington, D. C., with claim of copyright, the title and description of said motion picture, together with not less than two prints taken from different sections of said complete motion picture, as provided under section 11 of the said Copyright Law (as amended, 17 U.S. C.A. § 11), paying the legal fees as in such cases by law made and provided, and on the 12th day of April, 1928, the complainant's claim to said copyright was registered in the Copyright Office, Library of Congress, Washington, D. C., under entry class M, No. 4879, as more fully appears by the certificate issued by and under the seal of said Copyright Office and signed by the Register of Copyrights.

2. That thereafter on April 5, 1933, the complainant, Frederick Beck Patterson, first published the said motion picture entitled "Shooting Big Game With A Camera" reproduced in copies for sale, and in accord-

ance with the provisions of the said Copyright Law of the United States and rule 23 of the said Copyright Office, complainant filed an application with the said Register of Copyrights to register his claim to copyright in his said motion picture film entitled "Shooting Big Game With A Camera" as a motion picture other than a photoplay reproduced in copies for sale, specifying the date of publication as April 5, 1933, and complainant having deposited two complete copies of said motion picture and a description thereof in the said Copyright Office in Washington, D. C., and paid the necessary fees, as provided by the said Copyright Law, said registration was thereupon entered in the Copyright Office under Class M, No. 3941, as more fully appears from the certificate issued by and under the seal of said Copyright Office and signed by the Register of Copyrights.

3. That the complainant Frederick Beck Patterson was at all times, and still is, the owner and holder of the said copyright secured under the Copyright Law of the United States in and to the said motion picture entitled "Shooting Big Game With A Camera."

4. That prior to the commencement of this action the defendant Samuel Cummins illegally got possession of one of complainant's positive prints in 1932, which contained the copyright notice of the complainant Patterson, and at the direction of defendant Cummins a duplicate negative of a number of scenes of complainant's film was made at the laboratory of the defendant Empire Laboratories, Inc., a corporation owned and controlled by the defendant Fiedler. That likewise prior to the commencement of this action the defendants Samuel Cummins and Century Productions, Inc., deliberately purloined, copied, printed, duped, and plagiarized numerous and varied scenes, episodes, incidents, images, and photographs, amounting to over 1,000 feet of film, from the complainant's aforesaid copyrighted motion picture "Shooting Big Game With A Camera" and incorporated the same into a motion picture film produced by said defendants and entitled "The Jungle Killer"; that the defendants Richard Fiedler and Empire Laboratories, Inc., deliberately manufactured, developed, and printed negative films of said "The Jungle Killer" and positive film prints made therefrom, containing the aforesaid portions purloined, copied, and plagiarized from the complainant's said motion picture "Shooting Big Game With A Camera"; that thereafter the defendants Cummins and Century Productions, Inc., vended and published negative films and positive prints of said infringing "The Jungle Killer" in the United States and elsewhere, and distributed positive prints of said plagiarized film "The Jungle Killer" in the United States and elsewhere by vending, renting, or furnishing to third parties, for purposes of public exhibition, prints of the said plagiarized motion picture film "The Jungle Killer"; that said film "The Jungle Killer" containing the aforesaid purloined, copied, and plagiarized scenes from complainant's said copyrighted motion picture was thereby exhibited for purposes of profit before public audiences paying admission fees to witness such exhibitions in New York City, in the state of New York, in Cincinnati and Cleveland in the state of Ohio, and elsewhere; that the defendant Bob-Ed Theatres Corporation gave or caused to be given such exhibitions at the Central Theatre operated by it in New York City; that the defendants Century Productions, Inc., Samuel Cummins, Empire Laboratories, Inc., and Richard Fiedler, and each of them, willfully and deliberately aided, assisted, participated in, contributed to, or abetted not only said production and manufacture of the said negative and positive films of "The Jungle Killer" containing the material infringing on complainant's said copyrighted motion picture, but also the aforesaid distribution and exhibitions thereof in the United States and elsewhere, the aforesaid vending and publishing of negative and positive films of said infringing "The Jungle Killer," and other trafficking in and dealing with portions of the complainant's said motion picture film "Shooting Big Game With A Camera," for profit, in the United States of America, and elsewhere; and that all of the foregoing acts were done without warrant of law for purposes of profit, and in violation of the complainant's exclusive rights in and under the aforesaid copyright and without permission or license from the complainant; and that the said defendants, and each of them, respectively, failed to and did not show, as provided under section 25 of the Copyright Law of the United States (as amended, 17 U.S.C.A. § 25), that they were not aware that they were infringing a copyrighted work and that such infringements could not have been reasonably foreseen; and that defendants Cummins and Century Productions, Inc., after the service of proc-

ess upon them in this suit, further infringed upon complainant's said copyright and vended, distributed, and published a lavender print of the said "The Jungle Killer" containing the aforesaid material infringing on complainant's said copyright.

5. That the defendants, their distributors, agents, servants, employees, and any of them, and any and all persons, firms, and corporations who shall have derived any right, title, and interest in and to the whole or any part of the motion picture "The Jungle Killer" or to any negative or positive films or any other copies or colorable imitations made or derived from the whole or any portion of complainant's said copyrighted film "Shooting Big Game With A Camera," and any and all persons, firms, and corporations who shall have obtained any right, license, grant, or authorization by, through, from, or under any of the defendants, to print, reprint, copy, publish, produce, vend, reproduce, distribute, exhibit, or give any performance of the said motion picture "The Jungle Killer," whether such right, license, grant, or authorization be acquired by purchase, lease, rental, or otherwise, any and all persons, firms, and corporations acting by, through, under, or in concert with defendants' or any of them in any manner whatsoever, either directly or indirectly, and each and all of the foregoing persons, firms, and corporations, be and they hereby are perpetually enjoined and restrained from printing, reprinting, copying, plagiarizing, publishing, vending, dramatizing, novelizing, producing, reproducing, performing, exhibiting, in the form of or by means of any negative or positive motion picture films, including the said "The Jungle Killer," or otherwise, and from making or entering upon any contract, agreement, grant, or license in any such regard, the whole or any part of any of the scenes, episodes, incidents, images, photographs, and other materials contained in the complainant's said copyrighted motion picture "Shooting Big Game With A Camera," and the defendants herein and each and all of the foregoing persons, firms, and corporations, are hereby perpetually enjoined and restrained from exercising any other right of copyright secured by the Copyright Law of the United States to complainant in his said copyrighted motion picture "Shooting Big Game With A Camera," without license from the complainant or his duly authorized agent, and from aiding, abetting, assisting, participating in, or contributing to, either directly or indirectly, the violation of any of the exclusive rights of copyright secured by the complainant under the Copyright Law in said copyrighted motion picture film "Shooting Big Game With A Camera."

6. That the defendants and each and all of them, their agents, employees, successors, and assigns, and such persons, firms, and corporations to whom delivery has been made of, or in whose possession or under whose control there is, the whole or any part of parts of the said plagiarized motion picture film "The Jungle Killer" or any negative films or positive prints thereof, or any other negative films or positive prints or other materials on which copies or colorable imitations of the whole or any part of complainant's said copyrighted motion picture film "Shooting Big Game With A Camera" is contained or any plates, molds, matrices, devices, or other means for making infringing or plagiarizing copies of the whole or any part of complainant's said copyrighted work, are hereby directed and ordered to deliver up the same on oath to the clerk of this court to be impounded and destroyed.

7. That the defendants refused to stipulate as to complainant's damage and defendants' profit from the infringement. This matter is hereby referred to Paul J. McCauley of 70 Pine street, in the borough of Manhattan, city of New York, as special master to ascertain and report to the court, with his recommendations, for the purpose of aiding and guiding the court, but subject to examination, consideration, and approval of the court, the amount of such damages as the complainant may have suffered due to the aforesaid infringements, as well as all the profits which the said defendants and each of them shall have made from such infringements, pursuant to the provisions of said section 25 of the Copyright Law, and, in addition, the said special master shall further report, for the consideration of the court, as an alternative to actual damages and profits, such "in lieu of" statutory damages as shall appear to be just, pursuant to the provisions of said section 25, taking into consideration for such purpose that the maximum limitations in respect of such damages under section 25 are not applicable in respect of the defendant infringers who have failed to and did not show, as hereinabove decreed, that they

were not aware that they were infringing, and that such infringements could not have been reasonably foreseen, and, further, that the limitation as to the amount of recovery of such statutory damages does not apply to those infringements occurring after notice by the service of process in the within action, as provided in said section 25; that for the purpose of the foregoing reference, the complainant shall have the right to cause an examination of the defendants and their officers, servants, agents, and employees and each of them, and any and all other parties or witnesses who may have any knowledge, or information in regard to the subject-matter, or otherwise, and a right to the production of all the books, vouchers, contracts, documents, and records of the defendants and each of them, and the examination of such other witnesses, whose testimony may be material to the issues, and to production of their books and records, and that said defendants and other witnesses and each of them attend for such purposes before said special master from time to time as said special master shall direct; and that the allowance to the special master, and other costs of said reference shall be charged against and be borne by the defendants.

8. That the complainant recover of the defendants and each of them his costs and disbursements in this suit to be taxed by the clerk of this court.

9. That the clerk of this court issue a writ of injunction under the seal of this court to the defendants, and each of them, in accordance with this interlocutory decree.

10. That jurisdiction of this suit is hereby retained for the purpose of fixing and awarding to the complainant a reasonable attorneys' fee in this court as part of the costs, and for the purpose of making any further orders necessary to carry into effect this decree and to determine the amount to be awarded the complainant and for any further order necessary or proper to be made to effect a final adjustment and settlement of this controversy between the complainant and defendants.

11. That the opinion of the court filed herein on March 25, 1937, is made the court's finding of fact and conclusions of law on the case in accordance with Equity Rule 70½, 28 U.S.C.A. following section 723.