## WILKIE v. SANTLY BROS., Inc., et al.
### No. 121.

Circuit Court of Appeals, Second Circuit.

Dec. 13, 1943.

See, also, 36 F.Supp. 574.

Phillips, Nizer, Benjamin & Krim, of New York City (Louis Nizer, of New York City, and George B. Harris, of San Francisco, Cal., of counsel), for plaintiff-appellee.

Julian T. Abeles, of New York City (Julian T. Abeles and Leopold Bleich, both of New York City, of counsel), for appellant Santly Brothers, Inc.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff successfully prosecuted his suit against the appellants for the infringement of his common-law copyright on the music of an unpublished song called "Confessing" by the publication of the music for a song entitled "Starlight, Help Me Find The One I Love." Wilkie v. Santly Bros., 2 Cir., 91 F.2d 978. Appellant Petkere wrote the infringing music and Santly Bros., Inc., published it though without knowledge, or reason to believe, that it was infringing any copyright. A master appointed by the District Court heard the parties on the accounting which followed, and in due course filed his report stating the account which was accepted and confirmed by the court except in respect to one item not now in controversy. The plaintiff offered no evidence of damages. The master reported the profits found to have been made by the publisher on the infringing song and the royalties received by the author. They were awarded to the plaintiff in the decree. Both defendants appealed, but the author has not pressed her appeal.

The publisher has argued that the decree below was erroneous in that it derived no profit whatever from the infringement (1) because its business as a whole showed a loss during the infringing period, and (2) because, if allowed a proper credit for overhead, it lost money on that part of its business which did infringe the plaintiff's copyright whereas it was found by the master to have made a profit on that part because only a portion of its overhead which should have been allocated to that publication was deducted from the gross receipts by the special master. The principal issue is whether in the accounting

proper credit was allowed to the publisher for overhead.

█ This appellant was established in business before the infringing music was published, and during the time of the infringement its business included the publication and sale of many other songs, some successful and others not. It did operate at an over-all loss, but that gave it no immunity from accounting for any profits made by the infringement merely because they were less than enough to make its entire business profitable. Tilghman v. Proctor, 125 U.S. 136, 8 S.Ct. 894, 31 L.Ed. 664; Fox Typewriter Co. v. Underwood Typewriter Co., 6 Cir., 287 F. 447. If it was proved that it lost less because of the infringement, to that extent the infringement gave it a profit for which it must account. Mowry v. Whitney, 14 Wall. 620, 20 L.Ed. 860; Brown Bag-Filling Machine Co. v. Drohen, 2 Cir., 171 F. 438.

██ The general rule which controls in such a situation was stated in Sheldon v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 45, 54, and is that, "'Overhead' which does not assist in the production of the infringement should not be credited to the infringer; that which does, should be; it is a question of fact in all cases." It is clear that this publisher necessarily made use of its organization and facilities for the publication and promotion of the sale of such compositions as this and the overhead expenses required to maintain that organization did assist in the production of the infringement. There is now no dispute about the way that part of the overhead which was increased by the infringing acts was credited. The controversy is now centered upon the question of the proper allocation of the other, or indirect overhead expenses of the publisher, and the only issue raised as to that is whether or not the indirect overhead, i.e., the cost of operation which was not increased by the publication and sale of the infringing music, should be apportioned on the basis of the number of copies sold or the number of songs published. The master found that forty-seven songs, or all those which were of enough consequence to sell to the amount of fifty or more copies, were to be taken as the number published during the period of infringement. Though the appellant now argues that this was more than was proved, it did not suggest any other basis for a numerical classification on the accounting, and as there was evidence to

support the master's finding we accept it as did the District Court. Nor did the appellant suggest any basis for the apportionment of overhead other than that of copies sold or songs published.

The infringing publication was the largest seller, indeed only three others even approached its sales volume. If the fixed overhead should be apportioned on the basis of copies sold, that proportion would of course vary directly with the number of sales of a particular song; although it was shown that no one song was more responsible for, or its publication more assisted by, this sort of overhead than was another. In the absence of any rule of law requiring the use of such a method in these circumstances the result would be so unfair as to preclude the use of the method.

It is true that many cases can be found in the books where the apportionment of overhead in accounting for profits has been made by the sales method. But that by no means shows that it is applicable here. There isn't any hard and fast rule except that in an accounting for profits by an infringer they must be determined as fairly and as accurately as the circumstances of the case will permit. Levin Bros. v. Davis Mfg. Co., 8 Cir., 72 F.2d 163; Oehring v. Fox Typewriter Co., 2 Cir., 251 F. 584.

█ The method which will best do that in this instance was, we think, the one used. The expense of this indirect overhead had to be borne by the appellant whether it published the infringing song or not. As the publication of the latter neither increased it nor deceased it, and the same may be said of each of the others, it was fair to treat it as of equal assistance to the publication of each, since in the aggregate they all required it, and to divide it accordingly. Surely this fixed overhead was not of more assistance to the publication of the infringing song because the sales of it were comparatively large. Nor was the part these expenses played in the publication of the appellant's other songs any less by reason of the smaller demand and consequently smaller sales of them. As the unit basis of apportionment of this kind of overhead allowed the appellant the fair amount of that cost in this instance, there was no error in using it in finding the amount of its profits. Indeed, it is the way the computation should have been made to be in accord with the method approved in Sheldon v. Metro-Goldwyn Corp., supra.

The only remaining question is whether it was erroneous to impose the costs of the reference upon the appellant, Santly. It did file an account, to be sure, but as filed that showed no profits whatever to be accounted for because the overhead was improperly apportioned. The result shows that the account so filed did not make the hearings before the special master unnecessary; and as the plaintiff has prevailed, the district court awarded costs correctly.

Affirmed.