**Consuelo Stephanie PYE and Iris Lee
Hammer, Plaintiffs-Appellees,**

v.

**James MITCHELL, Arthur Mitchell and
Cinema Seven, Inc.,
Defendants-Appellants.**

No. 75–2902.

United States Court of Appeals,
Ninth Circuit.

May 3, 1978.

Robert L. Thorp (argued), San Francisco, Cal., for defendants-appellants.

Stephen Arian (argued), San Francisco, Cal., for plaintiffs-appellees.

Before DUNIWAY, SNEED and TANG, Circuit Judges.

SNEED, Circuit Judge:

This is an infringement action under the 1909 Copyright Act, Act of March 4, 1909, c. 320, § 25, 35 Stat. 1081, as amended prior to

the comprehensive revision by Pub.L. No. 94–553, Title I, § 101, Oct. 19, 1976, 90 Stat. 2541, effective January 1, 1978. Inasmuch as the cause of action arose prior to January 1, 1978, it is governed by Title 17, U.S.C. "as it existed when the cause of action arose," section 112, Pub.L. No. 94–553.

Defendants/Appellants James Mitchell, Arthur Mitchell, and Cinema Seven, Inc. were found liable for infringement of Plaintiff/Appellee Consuelo Pye's copyright in the musical work "Lucy's Song." The district court awarded Pye $5,000 for the use of "Lucy's Song" in defendants' movie "Flesh and Brimstone" and $5,000 for its use by defendants in the movie "Sex Odyssey." Defendants do not contest their liability for infringement of "Lucy's Song" but argue that the measure of damages is not justified by the damage provisions of the Copyright Act, 17 U.S.C. § 101(b). Defendants were also found liable for infringement of Consuelo Pye's and Iris Hammer's undivided one-third interests in the musical composition "Whatever Happens." The district court awarded Pye and Hammer each $5,000 for defendants' use of their music in "Sex Odyssey." Defendants contest both the finding of statutory liability for "Whatever Happens" and, alternatively, the amount of damages awarded. Plaintiffs were awarded $9,600 in attorneys' fees plus costs of suit which defendants contest for the first time on this appeal.

Two basic issues confront us. The first is whether Pye and Hammer are entitled to statutory damages under 17 U.S.C. § 101(b) for defendants' use of "Whatever Happens" in "Sex Odyssey." Defendants argue that copyright protection for the song was not effective until a date subsequent to any acts of infringement. Defendants argue further that even if copyright protection was effective at the time of infringing performances, plaintiff Hammer is not entitled to statutory damages because she was not registered as a joint owner with the Copyright Office at the time of any acts of infringement.

The second issue is whether a written release from liability, executed by a joint owner of copyright, which did not expressly mention copyright infringement, constituted actual notice of infringement for the purpose of invoking the exception to the limitations on damages set forth in 17 U.S.C. § 101(b). Defendants contend that because the release was not formal notice it cannot serve as actual notice so as to invoke the exception and justify the damages awarded by the lower court.

Finally defendants argue, for the first time on appeal as already noted, that the attorneys' fees award included amounts for time spent on issues not directly related to the present litigation.

We affirm the lower court's decision. Plaintiffs Pye and Hammer are both entitled to statutory damages under 17 U.S.C. § 101(b). The written release did constitute actual notice of infringement of plaintiffs' interest in "Whatever Happens" with the result that the damages awarded by the lower court are well within its discretionary powers. And finally, we will not overturn the award of attorneys' fees where the issue is first raised on appeal.

I.

*Facts.*

Plaintiffs Consuelo Pye and Iris Hammer compose and perform musical works. Defendants Arthur Mitchell, James Mitchell, and Cinema Seven, Inc. produce sexually explicit movies. Consuelo Pye created and wrote the musical composition "Lucy's Song." She secured statutory copyright protection for the unpublished work under 17 U.S.C. § 12 on January 17, 1972. Pye, Iris Hammer, and Daniel LeBlanc (not a party to this action) co-authored the musical composition "Whatever Happens." LeBlanc fulfilled the requirements of 17 U.S.C. § 12 on March 8, 1972. A space provided for "application received," one of three required dates on the registration certificate, originally read March 8, 1972, but for an unknown reason, has since been altered to May 22, 1972. LeBlanc obtained the registration certificate in his and Pye's

names only. On February 7, 1973, both an Assignment and Transfer of Part Ownership of Copyright to Iris Hammer and an Affidavit Correcting Fact of Ownership were recorded with the Register of Copyrights in recognition of Hammer's interest in "Whatever Happens."

Both musical compositions were performed publicly at the Palace of Fine Arts in San Francisco on September 25, 1971 as part of a concert given by "Synchronicity," a group to which Pye and LeBlanc belong. Alex Benton, a Mitchells' employee, recorded the concert without the consent of either Pye, Hammer, or LeBlanc.

The Mitchells incorporated "Lucy's Song" in a sound track accompanying "Flesh and Brimstone," a movie first released October 5, 1971. The Mitchells included both "Lucy's Song" and "Whatever Happens" in a production entitled "Sex Odyssey," first released May 5, 1972. Following the premiere of each movie, Bruce Hatch, a sound engineer for the Mitchells, informed defendants that their productions contained infringing music. The Mitchells did not expunge "Lucy's Song" from "Flesh and Brimstone" or "Sex Odyssey." They did delete "Whatever Happens" from one print of "Sex Odyssey." There were at least three prints of "Sex Odyssey," incorporating plaintiffs' music, in circulation, two of which were screened after May 25, 1972. The lower court found infringing performances in excess of ten times of "Flesh and Brimstone" between October 5, 1971, and November 9, 1972, and of "Sex Odyssey" between May 5, 1972 and June 20, 1974.

About a week after the first screening of "Sex Odyssey" Arthur Mitchell, Consuelo Pye, Daniel LeBlanc, and Alex Benton discussed the Mitchells' use of plaintiffs' music. Before angrily leaving the meeting, Pye made it clear that she did not consent to the defendants' use of her music. On May 25, 1972, LeBlanc, purporting to represent Pye, executed a written release relieving the Mitchells from further financial responsibility for the use of plaintiffs' music for the previous two-week period.[1] An addendum, dated May 30, 1972, notes that it was agreed that the music was not to be used again. Both the release and the addendum were signed by LeBlanc and Arthur Mitchell. The lower court found that the release constituted actual notice of infringement.

Plaintiffs' actual damages and defendants' actual profits were unascertainable. The lower court, as already noted, awarded statutory "in lieu" damages to Pye in the amount of $5,000 for the multiple infringements of "Lucy's Song" in "Flesh and Brimstone" and $5,000 for the multiple infringements of "Lucy's Song" in "Sex Odyssey." The lower court also awarded Pye and Hammer each statutory damages of $5,000 for the infringement of "Whatever Happens" in "Sex Odyssey" and attorneys' fees in the amount of $9,600.

We will discuss the two principal issues which this case presents and then briefly turn our attention to the question of attorneys' fees.

## II.

*Plaintiffs Pye and Hammer are entitled to statutory damages under 17 U.S.C. § 101.*

Only the proprietor of statutory copyright at the time of acts of infringement is entitled to damages under 17 U.S.C. § 101.[2]   2 Nimmer on Copyright § 132

---

1. The release reads: IT IS HEREBY UNDERSTOOD AND AGREED that I, DANIEL LeBLANC, representing SYNCHRONICITY and CONNIE PYE release CINEMA 7, INC., from any further financial responsibility concerning its rental of forty-five (45) minutes of moog music and lyrics entitled "Whatever Happens" and "E.E. Cummings," which was used by CINEMA 7, INC., for a period of two (2) weeks, inasmuch as I am in receipt of a check to my order in the sum of $200.00 for rental thereof.

2. 17 U.S.C. § 101 reads in part:
   "If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:
   (b) To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement . . . ."

(1976). The district court concluded that Pye and Hammer are proprietors of undivided one-third interests in the musical work "Whatever Happens" effective March 8, 1972. Defendants first contend that because the March 8, 1972 date originally entered adjacent to "application received" on the registration certificate was altered to May 22, 1972, the latter is the true effective date of copyright. Furthermore, defendants maintain that there were no acts of infringement subsequent to May 22, 1972. Therefore they cannot be found liable for statutory damages where they have not infringed a statutory right.

■ Defendants tender this argument for the first time on appeal. That is too late. The copyright registration certificate was admitted into evidence with the express stipulation that the effective date was March 8, 1972. It is not clear from the record whether the May 22 date had even been substituted at this time. Far from making the requisite specific and timely objection at trial, Fed.R.Evid. 103(a)(1), defendants agreed to the effectiveness of copyright as of March 8. Where an issue is conceded below, it cannot be raised for the first time on appeal. *Drop Dead Co. v. S. C. Johnson & Son, Inc.,* 326 F.2d 87 (9th Cir. 1963), *cert. denied,* 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964); *Wilson v. Byron Jackson Co.,* 93 F.2d 572 (9th Cir. 1937); *Edward B. Marks Music Corp. v. Continental Record Co.,* 222 F.2d 488 (2d Cir.), *cert. denied,* 350 U.S. 861, 76 S.Ct. 101, 100 L.Ed. 764 (1955). Since the argument was not properly raised at the district court level, it may not be presented in the Court of Appeals. *Rothman v. Hospital Service of Southern California,* 510 F.2d 956 (9th Cir. 1975). We affirm the district court's finding that the effective date of copyright in "Whatever Happens" is March 8, 1972.

■ Defendants next argue that plaintiff Hammer was not a proprietor of copyright in "Whatever Happens" until January 7, 1973, the date she was officially recorded in the Copyright Office as a joint owner. The district court found that Hammer, together with Pye and LeBlanc "created and wrote the original words and music" to "Whatever Happens" and that "at all times herein applicable plaintiffs, Consuelo Pye and Iris Hammer, have each been and still each are sole proprietors" of "Whatever Happens." We uphold the trial court's conclusion that Hammer was a proprietor of an undivided one-third interest in "Whatever Happens" even though she was not a proprietor of record.

■ If a work is a product of joint authorship, each co-author automatically becomes a holder of an undivided interest in the whole. 1 Nimmer on Copyright § 69 (1976). There is abundant evidence in support of the finding that Hammer co-authored "Whatever Happens." When LeBlanc secured copyright for the composition on March 8, 1972 in his and Pye's names only, he did not divest Hammer of her interest in the music she had co-authored. In a similar situation where the defendant and plaintiff had jointly "conceived, compiled, and created" a book and its parts for which defendant had obtained the related copyrights in her name only, this circuit found that the defendant held the copyright in trust for the co-author-plaintiff. *Richmond v. Weiner,* 353 F.2d 41 (9th Cir. 1965), *cert. denied,* 384 U.S. 928, 86 S.Ct. 1447, 16 L.Ed.2d 531 (1966). Likewise, LeBlanc and Pye held the copyright in trust for Hammer.

Therefore, Hammer, although not the proprietor of record, was an equitable proprietor of an undivided one-third interest in "Whatever Happens" at the time defendants appropriated it for their own use. While we express no opinion on the right of an equitable owner of a copyright to bring an action for infringement in his own name and without joinder of the legal owner, we do hold that the equitable owner, Hammer, when joined with Pye, a legal owner, as plaintiffs may maintain an infringement action against a non-owner infringer for injuries prior to the time she, Hammer, became a legal proprietor. *Cf. Manning v. Miller Music Corp.,* 174 F.Supp. 192 (D.C.N.Y. 1959). Of course, as a legal proprietor of the copyright, Hammer is entitled to recov-

er damages for any infringement occurring after she acquired her legal interest.

■ Defendants additionally assert that even if Hammer was a proprietor they had no notice of her ownership and would have been unable to discover her interest. Their argument that these facts should relieve them of liability for $5,000 in damages is unavailing. First, the assertion that they would have been unable to discover Hammer's ownership is factually inaccurate. Secondly, a defendant may be liable where he copied with or without a license, from a third party, who in turn had copied from the plaintiff. *Buck v. Jewell-LaSalle Realty Co.,* 283 U.S. 191, 198–99, 51 S.Ct. 410, 75 L.Ed. 971 (1931), 2 Nimmer on Copyright § 148 (1976). In such a situation the defendant may not even know the plaintiff exists, much less his name, and certainly has less opportunity to discover the true owner than the defendants in this case. Indeed, even where the defendant believes in good faith that he is not infringing a copyright, he may be found liable. *See County of Ventura v. Blackburn,* 362 F.2d 515 (9th Cir. 1966) (trial court's determination that "lack of intent to infringe does not excuse legal liability upheld").

Because the effective date of copyright protection was March 8, 1972, and Pye and Hammer were both proprietors at that and at all times when defendants infringed their copyright, they are entitled to a statutory damage award.

### III.

*The written release constitutes actual notice of copyright infringement and thus justifies the damages awarded.*

■ 17 U.S.C. § 101(b) provides that a copyright proprietor may recover actual damages as well as the defendants' actual profits due to the infringement. Alternatively, the copyright proprietor may be awarded, "in lieu of actual damages and profits, such damages as to the court shall appear to be just." Where, as here, neither plaintiffs' actual damages nor defendants' actual profits are ascertainable the award of "in lieu" damages is mandatory. *Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1179 (9th Cir. 1977).

Ordinarily the trial court's discretion as to the measure of damages is confined by minimum and maximum dollar award limitations. After a list of exceptions to the limitations designed to relieve the financial burden on innocent infringers[3] the statuto-

---

**3.** 17 U.S.C. § 101 states in relevant part:
"If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable
. . .
(b) To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement . . . in lieu of actual damages and profits, such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated but . . . in the case of the infringement of an undramatized or nondramatic work by means of motion pictures, where the infringer shall show that he was not aware that he was infringing, and that such infringement could not have been reasonably foreseen, such damages shall not exceed the sum of $100 and in the case of an infringement of a copyrighted dramatic or dramatico-musical work by a maker of motion pictures and his agencies for distribution thereof to exhibitors, where such infringer shows that he was not aware that he was infringing a copyrighted work and that such infringements could not reasonably have

been foreseen, the entire sum of such damages recoverable by the copyright proprietor from such infringing maker and his agencies for the distribution to exhibitors of such infringing motion picture shall not exceed the sum of $5,000 nor be less than $250, and such damages shall in no other case exceed the sum of $5,000 nor be less than the sum of $250, and shall not be regarded as a penalty. But the foregoing exceptions shall not deprive the copyright proprietor of any other remedy given him under this law, nor shall the limitations as to the amount of recovery apply to infringements occurring after the actual notice to a defendant, either by service of process in a suit or other written notice served upon him."
The exceptions for innocent infringers as well as the language lifting the ceiling on damages for infringements after actual notice were part of the Townsend Bill which amended the 1909 Act in 1912. The legislators were particularly concerned that the movie industry might be crippled by awards of the maximum statutory damages in circumstances where it would have been impossible to discover the fact of infringement. This protection would be lost "as soon

ry language continues, "such damages shall in no other case exceed the sum of $5,000, nor be less than the sum of $250 . . ." But these "limitation[s] as to the amount of recovery [shall not] apply to infringements occurring after the actual notice to a defendant, either by service of process in a suit or other written notice served upon him." Once actual notice releases the court from the strictures of the statutory limitations, the court is bound only by the language allowing "such damages as . . . shall appear to be just."

▮ The lower court concluded:

> On May 25, 1972, defendants herein received written notice of the copyrights herein. Said notice consisting of communications herein and that certain writing designated "consent" and executed on said date by Daniel LeBlanc and Arthur Mitchell.
>
> Thereafter, defendants willfully and intentionally and with notice of said copyrights did cause the motion pictures "Flesh and Brimstone" and "Sex Odyssey" to be shown, thereby continuing to infringe plaintiffs copyrights on numerous occasions.

This conclusion justifies the damage awards, which might otherwise be beyond the statutory limitations.[4] Defendants argue that the release (or "consent") cannot serve as written notice so as to raise the statutory ceiling because the "notice makes no mention of copyright, nor does the testimony concerning its negotiation do so."[5] Additionally they argue that there was no evidence to support a finding of infringing performances of "Sex Odyssey" following the purported written notice. We hold that the release did constitute written notice within the meaning of 17 U.S.C. § 101(b),

and that the finding of infringements after such notice was not clearly erroneous.

There is a dearth of authority as to what constitutes actual notice within the meaning of the statute. One court has held that even where the defendant had actual notice that he was infringing, the statutory language required that he then be a defendant and have notice of the pending lawsuit. *Advertisers Exchange, Inc. v. Hinkley,* 199 F.2d 313 (8th Cir. 1952), *cert. denied,* 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710 (1953). We reject this unduly restrictive interpretation of the statute. We agree that "[b]y specifying that written notice other than service of process will suffice, Congress has quite surely indicated that one need not already have become a defendant for written notice to be effective." *Davis v. E. I. DuPont de Nemours & Co.,* 249 F.Supp. 329, 344 (S.D.N.Y.1966) (holding that a letter or telegram is sufficient written notice). *See* 2 Nimmer on Copyright § 154.2 (1976).

Our conclusion is buttressed by the fact that some courts have found that actual notice will suffice when there exists neither service of process nor written notice. This circuit, for example, has suggested in dictum that sufficient notice to the defendant may be imputed from the notice and knowledge of his agents and employees even though there was no "written notice served upon him." *Universal Pictures Co. v. Harold Lloyd Corp.,* 162 F.2d 354 (9th Cir. 1947). Another recent decision found actual notice where the defendant knew that the material belonged to the plaintiffs and had entered into unsuccessful negotiations to obtain a license even though there was neither service of process nor written notice. *Smothers v. CBS, Inc.,* 359 F.Supp. 723 (C.D.Cal.1973). Still other courts have based findings of actual notice on the fact

---

as the manufacturer received *ordinary notice* that it was an infringement." (emphasis added) 48 *Cong.Rec.* 8290 (2d Sess. 1912) (remarks of Rep. Townsend).

4. Because of our disposition of the written release issue we need not discuss other possible rationales for the damages award.

5. Defendants also characterize the release executed by LeBlanc as a non-exclusive license

granted by a joint owner of copyright and argue that, as such, it relieves them from liability to Pye and Hammer. The merits of this argument need not be reached. Whether or not valid, the release on its face is limited to a period of two weeks—May 11, 1972 to May 25, 1972. There is ample support in the record for findings of infringement both before and after the "licensed" period.

that the plaintiff had told the defendant that he was infringing his copyright, *Schellberg v. Empringham,* 36 F.2d 991 (S.D.N.Y. 1929) and on the finding that defendant had directly observed a copyright notice with plaintiff's name affixed to the sheet music which was copied, *Mills Music, Inc. v. State of Arizona,* 187 U.S.P.Q. 22 (D.Ariz.1975). While it can be asserted that these cases go beyond the wording of 17 U.S.C. § 101(b), which speaks of "written notice", they do evidence a strong tendency to regard the substance of the notice above its form.

This enables us to put aside defendants' objections to the form of the notice. While there is no express statement announcing that the defendants have infringed plaintiffs' copyright, there is implicit in the procurement and composition of the "release" the knowledge of copyright infringement. The release was secured for no other purpose than to relieve defendants of liability for copyright infringement. Its terms indicate that defendants are released from "further financial responsibility" implying that financial responsibility or liability had previously accrued. The release purports to be authorized by Connie Pye. At the time of its execution the defendants had full knowledge that Pye owned the subject music. The release was notice and in writing. A "written notice" within the meaning of the statute includes a notice in writing even if its construction by some courts embraces more. It need not be captioned, "Written Notice." To insist upon such a caption or its equivalent would be to exalt form over substance which neither the authorities nor reason require.

An additional reason for our finding is that it appears that the written notice primarily was designed to serve an evidentiary purpose. Congress, in enacting this provision concurrently with the clauses decreasing statutory limitations on recovery where the defendant was an innocent infringer, sought to lessen the potentially bankrupting liabilities of movie producers who could not protect themselves "by the exercise of reasonable diligence" but to terminate that protection upon notice.[6] Congress did not prescribe the form of the notice, but legislative history indicates that "ordinary notice"[7] terminates protection. Written notice is made the method by which innocent and willful infringers are distinguished. Professor Nimmer suggests that the draftsmen may have intended that only "this particular and decisive form of proof of knowledge should be sufficient to remove the maximum limitation." 2 Nimmer on Copyright § 154.2 (1976). The release in this case we believe clearly fulfills the evidentiary purpose which the written notice requirement appears to serve. We find that the defendants were on actual notice of infringement as of May 25, 1972.

■ The district court's finding that defendants continued to infringe plaintiffs' copyright after receipt of actual notice through several screenings of "Flesh and Brimstone" and "Sex Odyssey" may not be upset unless it is "clearly erroneous." *County of Ventura v. Blackburn,* 362 F.2d 515, 521 (9th Cir. 1966). The evidence as we view it amply supports the court's finding.[8]

6. Statute in Relation to Copyrights, *H.R. Rep.No.* 756, 62nd Cong., 2d Sess. 3–4 (1912).

7. 48 *Cong.Rec.* 8290 (1912) (remarks of Rep. Townsend.)

8. The record shows that at least three prints of "Sex Odyssey," with plaintiffs' music, were produced. The infringing music was deleted from only one of those prints. The testimony of Gerald Bonner, the defendants' accountant, together with Joint Exhibit Two provides circumstantial evidence that at least one print with infringing music was screened after May 22, 1972. Bonner testified that for each print of "Sex Odyssey" there was an alphabetically labeled inventory control card on which the date and name of each theater engagement was recorded. There were three such cards for "Sex Odyssey." According to Joint Exhibit Two, at least two prints were shown after May 22, 1972. The stock card for print "A" records an engagement on November 29. The stock card for print "C" records engagements from May 19 to June 5, June 12 to June 26 and October 26. Because the movie did not exist until May 5, 1972, the year date is at least 1972. The only inference is that at least one of the two prints screened after May 25, 1972 included infringing music. Other portions of Joint Exhibit Two reveal that a print of "Sex Odyssey" was shown at various times from May 16, 1974 to June 20, 1974, but there are no specifications as to which print.

Therefore, the court was no longer bound by the statutory limitations. The damages awarded are within the discretion of the trial court and we find no abuse of that discretion.

## IV.

*Attorneys' Fees.*

■ 17 U.S.C. § 116 provides that "the court may award to the prevailing party a reasonable attorneys' fee as part of the costs." Plaintiffs' attorneys filed a summary of hours on March 3, 1975 which defendants dispute in certain respects for the first time on this appeal.

■ Usually errors not raised below will not be considered on appeal. *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), *Hormel v. Helvering,* 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); *Michael-Regan Co. v. Lindell,* 527 F.2d 653 (9th Cir. 1975); *Terkildsen v. Waters,* 481 F.2d 201 (2d Cir. 1973); *Goldberg v. Weiner,* 480 F.2d 1067 (9th Cir. 1973). For this reason we will not disturb the court's award of attorneys' fees.

AFFIRMED.