752 F.2d 1326
 224 U.S.P.Q. 674, 1985 Copr.L.Dec. P 25,736
 KAMAR INTERNATIONAL, INC., a corporation, Plaintiff-Appellee,
v.
RUSS BERRIE AND COMPANY, INC., a corporation; Sol Levy, an
individual, Defendants-Appellants.
KAMAR INTERNATIONAL, INC., a corporation, Plaintiff-Appellant,
v.
RUSS BERRIE AND COMPANY, INC., a corporation; and Sol Levy,
an individual, Defendants-Appellees.
 No. 83-6176, 83-6218.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 7, 1984.
Decided Dec. 4, 1984.
 
 Michael A. Painter, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for defendants.
 Joseph A. Yanny, Herzig, Schaap & Young, Beverly Hills, Cal., for plaintiff.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, PREGERSON, and ALARCON, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 This copyright infringement case requires us to determine how to calculate both statutory damages and damages based on an infringer's profits. We have jurisdiction under 28 U.S.C. Sec. 1291. Both parties appealed. We affirm in part and reverse and remand in part.
 
 
 2
 * Kamar International, Inc. (Kamar) and Russ Berrie & Co., Inc., together with its wholly-owned subsidiary, Russ Berrie & Co. West, Inc. (collectively Russ Berrie) sell stuffed animals to retailers. Russ Berrie also wholesales a variety of novelty statuettes, quotation plaques, wooden dolls, and Christmas ornaments. In July 1977 Russ Berrie exhibited a number of plush-covered stuffed animals at a Los Angeles gift show. Shortly afterwards, Kamar sued for copyright infringement. In an amended complaint, Kamar alleged Russ Berrie had infringed nine Kamar copyrights covering two teddy bears, two polar bears, one set of hugging bears, one set of hugging monkeys, two dogs, and a tiger.
 
 
 3
 The district court issued a preliminary injunction forbidding Russ Berrie to sell, market, or otherwise dispose of any copies of six of these animals. In November 1977 the district court made the injunction permanent. Despite segregating its goods, during December 1977 and January 1978 Russ Berrie accidentally shipped eighteen big polar bears, fifteen little polar bears, twelve or fifteen hugging bear sets, twelve hugging monkey sets, and twenty-seven tigers, all covered by the injunction.
 
 
 4
 A year and a half later, the district court rendered judgment in favor of Russ Berrie. It held that the animal designs were in the public domain and that Kamar had failed to prove the similarity of Russ Berrie's designs necessary to show infringement. The district court also found Russ Berrie merely purchased its animals from Korean manufacturers who claimed them as original designs, did not willfully seek to infringe any of Kamar's rights, and made sales after the beginning of the law suit only through inadvertence.
 
 
 5
 Kamar appealed. We reversed and remanded on both the validity and infringement of Kamar's copyrights. See Kamar International, Inc. v. Russ Berrie and Co., 657 F.2d 1059, 1063 (9th Cir.1981). On remand, the district court held Russ Berrie had infringed Kamar's nine valid copyrights. It again found Russ Berrie had not acted willfully. Without explanation, it estimated Russ Berrie's profits from the infringing animals at over $125,000, but promptly elected to award statutory damages to Kamar instead. It calculated statutory damages as the maximum $5,000 times the nine copyrights infringed by Russ Berrie before suit, plus $10 times 26,076 copies sold later, for a total of $305,760. By mistake, it was recorded as $310,760.
 
 
 6
 Russ Berrie moved to amend the judgment. First, it pointed to the lack of any evidence that it had sold copies of two of the infringing animals. Second, it stated it had sold the 26,076 stuffed animals only after the first judgment of the district court finding no infringement. The district judge granted the motion. First, he recalculated statutory damages as the maximum $5,000 times the seven copyrights infringed by actual sales plus the $250 minimum times the two copyrights infringed only by display of sample animals, for a total of $35,500. Second, he agreed he could not properly base statutory damages above the cumulative maximums on the sales following the judgment of no infringement, and eliminated $260,760 calculated on that basis. Third, because Russ Berrie's profits may have been higher than the statutory damages of $35,500, the district court requested supplemental briefing on the profits from sales of the infringing animals.
 
 
 7
 Following supplemental briefing, the district judge found Russ Berrie had profits, after deductions for cost of goods f.o.b. the manufacturers in Korea, shipping and other costs of importing, and administrative expenses of operations in Korea, of $118,131.90. He decided to award damages based upon Russ Berrie's profits rather than statutory damages but refused to allow any deduction for overhead costs. The district judge held that because the infringing items amounted to less than one percent of Russ Berrie's sales, Russ Berrie could not deduct overhead, and that even if the law allowed such a deduction, Russ Berrie had not proven its claimed overhead was actually attributable to sales of the infringing items.
 
 
 8
 Russ Berrie again moved to amend the judgment, arguing that the district court should have allowed a deduction for overhead. The district court denied the motion. Both Kamar and Russ Berrie appealed. Kamar argues that the district court should have awarded its original calculation of $310,760 in statutory damages, plus attorneys' fees, because Russ Berrie infringed willfully. Russ Berrie argues that because it did not willfully infringe, the district court should have allowed a deduction for overhead and, because the resultant net profit would be less than the statutory maximum, the awarded statutory damages should be at less than the maximum $5,000 per infringement for seven of the animals.
 
 II
 
 9
 The Copyright Act of 1909, 17 U.S.C. Secs. 1-216 (1976) (1909 Act), governs this case because Kamar's cause of action arose before January 1, 1978. See, e.g., Copyright Revision Act of 1976, Pub.L. No. 94-553, Sec. 112, 90 Stat. 2541, 2600 (Transitional and Supplementary Provisions section 112), reprinted at 17 U.S.C. Sec. 501 historical note (1976 Act); Pye v. Mitchell, 574 F.2d 476, 478 (9th Cir.1978) (Pye ). Where profits resulting from infringement have been demonstrated, the district court may, in its discretion, award statutory damages "in lieu" of the proven profits, pursuant to 17 U.S.C. Sec. 101(b) (1976), Sid & Marty Krofft Television Productions v. McDonald's Corp., 562 F.2d 1157, 1177-78 (9th Cir.1977), so long as the statutory damages awarded at least equal or exceed the ascertained profits. See id. at n. 7. A maximum of $5,000 is placed upon these statutory damages for each copyright infringed but that limitation does not "apply to infringements occurring after the actual notice to a defendant, either by service of process ... or other written notice ...." 17 U.S.C. Sec. 101(b) (1976). The district court held that the limitation applied in this case.
 
 
 10
 In determining whether to remove the statutory damages limits of section 101(b), the existence of a notice and the timing of an infringement present questions of fact, although a question of law may arise as to whether a particular notice satisfies the writing requirement. See, e.g., Pye, 574 F.2d at 482-83; see generally Harris v. Emus Records Corp., 734 F.2d 1329 (9th Cir.1984) (Harris ). We review questions of fact for clear error. E.g., United States v. McConney, 728 F.2d 1195, 1200 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); Fed.R.Civ.P. 52(a).
 
 
 11
 The evidence is clear that Russ Berrie sold some infringing copies after service of process. However, the district court held that any infringements of Kamar's copyrights were complete before service of process, apparently reasoning that Russ Berrie had possession of its entire stock of infringing copies by then. As support, the district court cited S.C. Johnson & Son, Inc. v. Drop Dead Co., 144 U.S.P.Q. 257, 259 (S.D.Cal.1965) (S.C. Johnson ). There, prior to actual notice Drop Dead purchased 50,075 labels that infringed S.C. Johnson's copyrighted mark. Drop Dead then sold some goods bearing the infringing labels before actual notice; some after actual notice. The district court held only one infringement occurred--the copying of the labels--and refused to award damages above the statutory ceiling for the sales, after actual notice, of the goods bearing the infringing labels.
 
 
 12
 We find S.C. Johnson unpersuasive. Its supporting citations, Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 400, 60 S.Ct. 681, 684, 84 L.Ed. 825 (1940) (discussing choice between actual damages and actual profits) (Sheldon II ), and Aro Manufacturing Co. v. Convertible Top Replacement Co., 377 U.S. 476, 502-14, 84 S.Ct. 1526, 1540-46, 12 L.Ed.2d 457 (1964) (plurality) (apportionment of actual damages between contributing and direct infringers of a patent), do not appear to us to be on point. One commentator has disapproved of its holding. See 3 M. Nimmer, Nimmer on Copyright Sec. 14.04[B] at 14-30 & n. 35 (1984) (notice gives a defendant "the option to change his conduct"). Our reasoning leads us to a different result than S.C. Johnson. A copyright holder has the right "[t]o print, reprint, publish, copy, and vend the copyrighted work." 17 U.S.C. Sec. 1(a) (1976). Much of the deterrent and remedial forces of a willfulness exception to the statutory damage limits would dissipate if an infringer in possession of unlicensed copies felt, after receiving actual notice of his infringement, that the law did not disfavor the aggravation of his potential wrong by vending the copies.
 
 
 13
 Thus, we conclude that the district court erred in adopting the rule in S.C. Johnson, and that it should instead give consideration to whether Russ Berrie's sales after service of process should result in an award of statutory damages beyond the normal maximum limit. The court of appeals in Alouf v. Expansion Products, Inc., 417 F.2d 767, 769 (2d Cir.1969), observed that where an infringer received shipments of infringing goods before and after actual notice, and had none left at judgment, "the judge very likely should thus have found the existence of infringements to which the statutory limitation of recovery would not apply ...." Similarly, in the equity analysis of Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354, 373 (9th Cir.1947), we held that because an infringer had, after actual notice, sold infringing items previously in his possession, the district court properly granted permanent injunctive relief.
 
 
 14
 For the reasons we have stated, Russ Berrie's sales after service of process could permit a cumulative award of statutory damages exceeding the statutory ceiling for each Kamar copyright related to the sales. That the sales could permit such an award, however, does not mean that such an award is mandated. "There [is] ... no requirement that the statutory maximum be exceeded" in such a case. Roy Export Co. Establishment v. Columbia Broadcasting System, 503 F.Supp. 1137, 1157 n. 12 (S.D.N.Y.1980), aff'd, 672 F.2d 1095 (2d Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); see 3 M. Nimmer, supra, Sec. 14.04[B] at 14-28.1 n. 30.
 
 
 15
 We affirm the district court's holding that the sales by Russ Berrie of its stuffed animals immediately following the first judgment do not count as infringements after notice. Kamar's supposed citation to the contrary, Patterson v. Century Productions, 19 F.Supp. 30 (S.D.N.Y.), aff'd, 93 F.2d 489 (2d Cir.1937), cert. denied, 303 U.S. 655, 58 S.Ct. 759, 82 L.Ed. 1114 (1938), is wholly inapposite. In its first judgment, the district court held Russ Berrie's animals noninfringing. Kamar did not obtain any stay pending appeal. Russ Berrie was entitled to rely on the judgment at that time.
 
 
 16
 On remand the district court should first determine the amount of profits resulting from the infringement, and it may then choose in its discretion, see Harris, 734 F.2d at 1335; Russell v. Price, 612 F.2d 1123, 1131-32 (9th Cir.1979), cert. denied, 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980) (Russell ), to increase or not the total statutory damages calculated for those Kamar copyrights willfully infringed by Russ Berrie following notice by Kamar within the meaning of section 101(b) as discussed above.
 
 III
 
 17
 Although the district court clearly erred, relying upon S.C. Johnson, in not considering willfulness under section 101(b), it correctly found Russ Berrie's infringements not willful in another, broader sense. Kamar cites Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45 (2d Cir.1939) (Sheldon I ), aff'd, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940), for the proposition that a court may automatically deny a willful infringer any deduction from profits of overhead expenses. There, the court of appeals found "a deliberate plagiarism," and for that reason allowed the infringers to deduct from profits
 
 
 18
 only ... such factors as they bought and paid for; the actors, the scenery, the producers, the directors and the general overhead. Indeed, a constructive trustee, who consciously misappropriates the property of another, is often refused allowance even of his actual expenses ... and although this harsh rule, which would charge the defendants with the whole gross receipts, has been softened, a plagiarist may not charge for his labor in exploiting what he has taken.
 
 
 19
 106 F.2d at 51 (citations omitted). Not only does this rule not disallow all overhead; it also does not necessarily apply to less than "deliberate plagiarism." Cf. Stevens Linen Associates, Inc. v. Mastercraft Corp., 656 F.2d 11, 16 (2d Cir.1981) (deliberate violation of an injunction).
 
 
 20
 In the senses of intent or moral blame, the district court's finding that Russ Berrie's infringements were not willful is not clearly erroneous. The record contains adequate evidence that the infringements were not deliberate. We affirm the finding because "on the entire evidence [we are not] left with the definite and firm conviction that a mistake has been committed," United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
 
 
 21
 This finding also disposes of the attorneys' fee issue. Attorneys' fee awards in these cases depend on "equity considerations." E.g., Russell, 612 F.2d at 1132. The district court's finding that Russ Berrie did not, in the broader sense of the term, willfully infringe Kamar's copyrights leads us to conclude that the district court did not abuse its discretion, see, e.g., id., in not awarding attorneys' fees to Kamar under 17 U.S.C. Sec. 116 (1976).
 
 IV
 
 22
 On remand, the district court may choose to recalculate statutory damages. Within limits, the choice between awarding statutory damages or the infringer's profits also lies in its discretion, see F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 231-32, 73 S.Ct. 222, 224-25, 97 L.Ed. 276 (1952); Russell, 612 F.2d at 1131-32. The choice between statutory damages and profits does, however, require a reasonable method for computing the latter. It is to the computation of profits that we now turn our attention.
 
 
 23
 In general, 17 U.S.C. Sec. 101(b) (1976) makes an infringer liable for "all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only, and the defendant shall be required to prove every element of cost which he claims ...." The parties apparently agree that Russ Berrie's gross profits, less cost of goods f.o.b. the manufacturers in Korea, shipping and other costs of importing, and administrative expenses for Russ Berrie operations in Korea, yield a net of $118,131.90. Russ Berrie, however, argues the district court should also deduct overhead costs from this figure.
 
 A.
 
 24
 The district court initially proposed that, where sales of infringing goods amount to only a small percentage of the infringer's total sales, it would allow no overhead deductions. The parties have cited no case in which this rule has been applied to a copyright claim. Both precedents cited by the district court, Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582, 586 (5th Cir.1980) (Maltina ), and S.C. Johnson, 144 U.S.P.Q. at 259-60, apply the rule only to a trademark infringement. The statement in Maltina was an alternative holding after the court concluded that the district court correctly found that the increase in gross profits from sales of the infringing product did not increase gross expenses. Moreover, Maltina relied solely on S.C. Johnson for authority, a case we fail to find persuasive.
 
 
 25
 The real question, as we see it, is whether any of the overhead expenses were caused by the production or sale of the infringing goods, not the proportionate amount of sales of the goods in relation to total sales. Because of the varying situations which may arise and the lack of needed flexibility in an arbitrary standard, we decline to adopt a legal rule disallowing all overhead deductions merely because the sales of the infringing goods constitute a small percentage of total sales.
 
 B.
 
 26
 A different question is whether overhead expenses should be allowed when they would be incurred regardless of the production and sale of the infringing goods. A rule disallowing such expenses has the advantage of not allowing an infringer to reduce damages by deducting fixed overhead costs the infringer would have borne even without his sales of infringing goods. On the other hand, such a rule might create perverse incentives for a copyright owner to delay enforcing his rights and instead allow a diversified infringer to produce and sell infringing goods. If the copyright owner currently uses his fixed overhead to capacity, he would obtain by lawsuit net profits greater than he could have earned. Not only will the profits not cost him an increase in his own overhead; he will actually receive a premium representing the disallowance of the infringer's overhead.
 
 
 27
 Some courts have held an infringer may not deduct any indirect costs which would have been incurred even without the infringing sales. See, e.g., Taylor v. Meirick, 712 F.2d 1112, 1121-22 (7th Cir.1983) (1976 Act). Others accomplish the same result by requiring the infringer to show an increase in overhead. See, e.g., Baldwin Cooke Co. v. Keith Clark, Inc., 420 F.Supp. 404, 406 (N.D.Ill.1976). Other courts have generally allowed a portion of all overhead to be deducted from gross profits. In Wilkie v. Santly Bros., Inc., 139 F.2d 264, 265 (2d Cir.1943), cert. denied, 322 U.S. 740, 64 S.Ct. 1058, 88 L.Ed. 1574 (1944) (Wilkie ), the court allowed deduction of "indirect overhead [that] had to be borne by the [infringer] whether it published the infringing song or not." See also Neal v. Thomas Organ Co., 241 F.Supp. 1020, 1022 (S.D.Cal.1965) (Neal ) (allowing a deduction for "indirect costs of doing business ... [of] 14.7 percent" because "[i]t is common knowledge that any business has indirect costs and this percent should apply in the selling and handling of the [infringing items] ... the same as it would apply in the handling of any other items").
 
 
 28
 An award of infringer's profits is aimed in part at deterring infringements, see, e.g., Russell, 612 F.2d 1132, and in part at appropriately compensating the copyright holder. These goals, we believe, can best be achieved by allowing a deduction for overhead only when the infringer can demonstrate it was of actual assistance in the production, distribution or sale of the infringing product. See Sheldon I, 106 F.2d at 54 (" 'Overhead' which does not assist in the production of the infringement should not be credited to the infringer; that which does, should be; it is a question of fact in all cases."). This is a factual determination to be made by the district court, Sheldon II, 309 U.S. at 409, 60 S.Ct. at 688 ("deductions allowed in the computation of the net profits ... involve questions of fact"), which we review under the clearly erroneous standard. Pye, 574 F.2d at 483.C.
 
 
 29
 As an alternative to the small percentage of sales rule, the district court found Russ Berrie had not proved how its claimed overhead expenses related to sales of the infringing animals. This amounts to an application of the rule in Sheldon I.
 
 
 30
 Russ Berrie's controller, Leeder, testified at length concerning the company's overhead. Russ Berrie allocates all overhead in the same proportion among each item sold, whether a large stuffed animal, small stuffed animal, statuette, or other novelty. Leeder placed the percentage of each sale allocable to overhead at 42.94%. To the extent the district court found this percentage system an unreasonable method in general of accounting for overhead, it clearly erred. Russ Berrie adequately showed that it could not satisfactorily break out variations in actual costs of overhead between individual products because of their number and variety. Furthermore, courts have approved of such percentage allocations in other cases where actual variations in cost seem difficult to prove. See, e.g., Wilkie, 139 F.2d at 265; Sheldon I, 106 F.2d at 54; Neal, 241 F.Supp. at 1022. "There isn't any hard and fast rule except that in an accounting for profits by an infringer they must be determined as fairly and as accurately as the circumstances of the case will permit." Wilkie, 139 F.2d at 265.
 
 
 31
 On the other hand, to the extent the district court found Russ Berrie had not proved that all categories of its overhead contributed to sales of the infringing goods, it did not clearly err. Leeder testified that total overhead consisted of five categories: shipping and warehousing, selling, design, credit collection, and general administrative. He also stated that the company allocated design expense even to items it did not design and that, although costs of catalogues fell within design overhead, Russ Berrie had no catalogue at the time of the infringements. The district court did not clearly err if it found Russ Berrie had not proved that design overhead contributed to sales of the infringing animals.
 
 
 32
 Similarly, although Leeder established that Russ Berrie maintained a credit collection department at the distribution point for the infringing animals, he did not show that any sale of those goods required either a credit check or collection effort. The district court did not clearly err if it found Russ Berrie had not proved that credit and collection overhead contributed to sales of the infringing animals.
 
 
 33
 Design and credit and collection expenses amounted respectively to 1.4% and 1.6% of overhead. On remand, the district court can easily deduct those percentages from Russ Berrie's claimed total overhead. It must also decide whether Russ Berrie may deduct fixed overhead, which appears to be the bulk of the 17.6% general administrative expenses.
 
 V
 
 34
 In sum, the district court should recalculate Russ Berrie's allowable overhead deductions by finding whether the company proved, as to each category of overhead, that it actually contributed to the production, distribution or sales of the infringing goods. If fixed overhead so contributed, the district court should allow a deduction for it. In addition to recalculating Russ Berrie's profits, the district court must decide whether, in its discretion, to increase Kamar's potential statutory award above the ceilings in 17 U.S.C. Sec. 101(b) (1976). Finally, it must elect between these two measures of damages.
 
 
 35
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.