**WINTERLAND CONCESSIONS CO., et al., Plaintiffs,**

v.

**Peter FENTON, et al., Defendants.**

**No. C 91–3521 BAC.**

United States District Court,
N.D. California.

Oct. 20, 1993.

---

**530**

Goldstein & Phillips, San Francisco, CA, for plaintiffs.

Law Offices of Thomas J. Gundlach, San Francisco, CA, for defendants.

## MEMORANDUM DECISION AND ENTRY OF JUDGMENT

CAULFIELD, District Judge.

Plaintiffs Winterland Concessions Co. d/b/a Winterland Productions, Big Geoff Overseas, Ltd., Big Step Productions, Inc., Boy Toy, Inc., Bustin' Productions, Inc., and FYC Tours, Inc., the holders of exclusive licenses to sell products that exhibit pictures of the popular music artists Madonna, George Michael, New Kids on the Block, Hammer, and the Fine Young Cannibals, filed this action for damages under the Lanham Act, 15 U.S.C. § 1051 et seq., and California's right to publicity law, Cal.Civ.Code § 3344. Defendants Peter Fenton and Rathglade Limited d/b/a Atalanta West, Atalanta Press and Culture Shock are unlicensed producers and distributors of posterbooks and calendars,

which contain photographs of the musicians. Defendants sell calendars and posterbooks in both the United Kingdom ("U.K.") and the United States ("U.S."). On May 10, 1993, the jury returned a verdict for plaintiffs.

## DISCUSSION

This order has three purposes: (1) to memorialize and explain two rulings that the court made from the bench; (2) to resolve the parties' respective motions to increase and decrease damages; and (3) to enter judgment.

### A. *The Court's Pretrial Decisions*

During pretrial conferences, the court ruled on two issues that were hotly debated by the parties. The court believes that the parties would benefit in any future discussions from a written explanation of those rulings. The first is the court's determination that it could exercise extraterritorial jurisdiction over defendants' U.K. sales. The second is the court's denial of defendants' motion for summary judgment based on their assertion of a functionality defense.

■ 1. *Extraterritorial Jurisdiction.* In *Ocean Garden, Inc. v. Marktrade Co., Inc.,* 953 F.2d 500, 503 (9th Cir.1991), the Ninth Circuit held that a three-part test, first developed under the antitrust laws, *see Timberlane Lumber Co. v. Bank of Am., N.T. & S.A.,* 549 F.2d 597, 613 (9th Cir.1976), governed findings of extraterritorial jurisdiction under the Lanham Act:

(1) there must be some effect on American foreign commerce; (2) the effect must be sufficiently great to present a cognizable injury to the plaintiffs under the federal statute; (3) the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations.

■ The first two factors were readily met in this case. Defendants' foreign sales activities competed with and presumably decreased plaintiffs' foreign sales. *See Ocean Garden,* 953 F.2d at 503. More importantly, Mr. Fenton frequently oversaw his business' U.S. operations and sales from his U.K. base, thereby directly affecting plaintiffs' U.S. revenues.

The third factor requires the balancing of seven subcomponents: (1) the degree of conflict with foreign law; (2) the nationality of the parties; (3) the extent to which enforcement is expected to achieve compliance; (4) the relative significance of effects on U.S. as compared to elsewhere; (5) whether the explicit purpose of the infringement was to harm U.S. commerce; (6) the foreseeability of harm; and (7) the relative importance of violations within the U.S. *Id.* at 503–04. Like the first two factors, the third weighs in favor of exercising extraterritorial jurisdiction. The parties agreed that the Lanham Act does not conflict with U.K. law, all of the parties have substantial ties to California, and Mr. Fenton's substantial U.S. assets make an award readily enforceable here. By failing to pay for licensing rights and by selling items that competed with plaintiffs' domestic and foreign products, defendants substantially affected plaintiffs' U.S. business. The decision to sell competing products without paying licensing fees was an explicit decision to harm plaintiffs, and defendants' knowledge of plaintiffs' exclusive rights indicates that the harm was foreseeable. The court carefully weighed all of these factors, and held that it could properly exercise supplemental jurisdiction over defendants' foreign sales.

■ After the court ruled on the matter, defendants argued that the factors should be submitted to the jury. The court disagreed: The existence of subject matter jurisdiction is a question of law, *e.g., Reebok Int'l, Ltd. v. Marnatech Enter., Inc.,* 970 F.2d 552 (9th Cir.1992), and therefore is one for the court.

■ 2. *The Functionality Defense.* In their pretrial papers, defendants argued that they were entitled to judgment as a matter of law because the photos of the performers were functional. The question is intriguing. While it is clear in the Ninth Circuit that a celebrity has a trademark in his or her "persona," *Vanna White v. Samsung Electronics Am., Inc.,* 971 F.2d 1395 (1992), *amended,* 989 F.2d 1512 (9th Cir.1993), *and cert. denied,* —— U.S. ——, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). It is well established

that a trademark is functional if it "constitute[s] the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product," *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir.1980), *cert. denied*, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981).

█ The court denied defendants' motion for summary judgment, but later asked if they wished to propound a jury instruction on functionality. Defendants declined. Even if they had accepted, however, the court now holds that plaintiffs' would have been entitled to an instructed verdict on the issue: When a product feature is both functional and source-identifying, the *copier* must take "reasonable measures to avoid consumer confusion," *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1532 n. 11 (1992), *amended* (9th Cir.1993), there is nothing in the record from which a reasonable juror could conclude that defendants took any measures whatsoever.

### B. *The Motions Regarding Damages.*

1. *Plaintiffs' Motion.*[1] Title 15 U.S.C. § 1117(a)[2] governs motions to increase or decrease a Lanham Act damages award:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstance of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

Section 1117(a)'s primary purpose "is to 'take all the economic incentive out of trademark infringement.'" *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) (quoting *Playboy Enter., Inc. v. Bacca-*

*rat Clothing Co.*, 692 F.2d 1272 (9th Cir. 1982)); *accord. Jurgens v. McKasy*, 927 F.2d 1552, 1563–64 (Fed.Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 281, 116 L.Ed.2d 232 (1991).

█ The court is persuaded that there was sufficient evidence from which the court could calculate defendants' net profits, and disgorging them eliminates the economic incentive that prompted the violation in the first place. Plaintiffs take issue with the facts that the jury chose to believe, but credibility and weight determinations are for the finder of fact to make, and the court will not second guess them.

Nor does the court believe that § 1117(a) can be used as a discovery sanction. Any difficulties plaintiffs encountered in pursuing discovery as to defendants' sales should have been addressed in a motion pursuant to Federal Rule of Civil Procedure 37. *See Playboy Enterprises, Inc.*, 692 F.2d at 1276 ("we do not believe it would be appropriate to award [plaintiff] an equity based accounting of profits premised on potentially fictitious sales"). Accordingly, plaintiffs' motion to increase the damages award is DENIED.

2. *Defendants' Motion.* During trial the court granted plaintiffs' motion in limine excluding evidence of defendants' fixed costs. Defendants argue that this was error. According to defendants, the court should have adopted the "'full absorption approach,'" under which overhead costs are apportioned to production of the infringing item." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30.26[2][c]. The authors of the Restatement (Third) of Unfair Competition, however, advocate a different approach:

> The Restatement takes the position that while normal accounting practice may allocate overhead and general expenses over all products "such an allocation is ordinarily improper for purposes of determining the net profits for which the defendant must account."

---

1. In addition to their arguments in support of an increase in damages, plaintiffs state that they plan to bring a motion for attorneys' fees.

2. Plaintiffs do not argue that § 1117(b) is applicable.

J.T. McCarthy, *supra,* § 30.26[2][c] (quoting Restatement (Third) of Unfair Competition, § 37, comment h (Tentative Draft No. 3, 1991)).

During argument, the parties indicated to the court that there was no Ninth Circuit authority on this issue, and the court accordingly chose to follow the Restatement's rule. In considering defendants' motion for a decrease in the damages, however, the court unearthed one trademark case on point, *Wolfe v. National Lead Co.,* 272 F.2d 867 (9th Cir.1959), *disagreed with on other grounds by Maier Brewing Co. v. Fleischmann Distilling Corp.,* 359 F.2d 156 (9th Cir.1966), and two copyright cases with reasoning that is directly applicable to this case, *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.,* 752 F.2d 1326 (9th Cir.1984), and *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505 (9th Cir.1985). Having found the cases, the court is obligated to follow them. *Cf. Elder v. Holloway,* 951 F.2d 1112 (1991), *cert. granted,* —— U.S. ——, 113 S.Ct. 3033, 125 L.Ed.2d 721 (1993).

■ The cases hold that a defendant may deduct overhead expenses where he can demonstrate they were "of actual assistance in the production, distribution or sale of the infringing product." *Frank Music Corp.,* 772 F.2d at 516 (quoting *Kamar Int'l, Inc.,* 752 F.2d at 1332). Where more precise methods of allocating costs are not available, defendants may allocate costs based on the infringing products' share of gross revenues, *id.,* so long as there is, in addition, evidence to support a finding that each item included in fixed costs actually contributed to the infringing product, *id.* at 517. The question is one for the trier of fact. *Kamar Int'l, Inc.,* 752 F.2d at 1332. Even under this more lenient standard, however, defendants' proffer was wholly unsatisfactory. Accordingly, defendants' motion for a downward adjustment in the amount of damages is DENIED.

### *ENTRY OF JUDGMENT*

The issues in this matter having been tried, and the jury having rendered its special verdict, it is ORDERED and ADJUDGED:

1. That defendants have violated Section 3344 of the California Civil Code, and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

2. That plaintiff Winterland Concessions Co., d/b/a Winterland Productions recover of defendants the sum of Two Dollars ($2.00), with interest thereon at the rate provided by law.

3. That plaintiff Boy Toy, Inc. recover of defendants the sum of Two Dollars ($2.00), with interest thereon at the rate provided by law.

4. That plaintiff Big Geoff Overseas, Ltd. recover of defendants the sum of Two Dollars ($2.00), with interest thereon at the rate provided by law.

5. That plaintiff Bustin' Productions recover of defendants the sum of Two Dollars ($2.00), with interest thereon at the rate provided by law.

6. That plaintiff Big Step Productions recover of defendants the sum of Two Dollars ($2.00), with interest thereon at the rate provided by law.

7. That plaintiff FYC Tours, Inc. recover of defendants the sum of Two Dollars ($2.00), with interest thereon at the rate provided by law.

8. That plaintiff Winterland Concessions Co., d/b/a Winterland Productions also recover of defendants the sum of Seventy–Five Thousand Seven Hundred Dollars ($75,700.00) in net profits, with interest thereon at the rate provided by law.

9. That plaintiff Boy Toy, Inc. also recover of defendants the sum of Forty–Two Thousand Six Hundred Fifty–Four Dollars ($42,654.00) in net profits, with interest thereon at the rate provided by law.

10. That plaintiff Big Geoff Overseas, Ltd. also recover of defendants the sum of Six Thousand Four Hundred Twenty Dollars ($6,420.00) in net profits, with interest thereon at the rate provided by law.

11. That plaintiff Bustin' Productions, Inc. also recover of defendants the sum of One Thousand Twenty Dollars ($1,020.00) in net profits, with interest thereon at the rate provided by law.

12. That plaintiff Big Step Productions, Inc. also recover of defendants the sum of Fifty–Four Thousand Five Hundred Seventy Dollars ($54,570.00) in net profits, with interest thereon at the rate provided by law.

13. That plaintiff FYC Tours, Inc. also recover of defendants the sum of One Thousand One Hundred Thirteen Dollars ($1,113.00) in net profits, with interest thereon at the rate provided by law.

14. That plaintiffs Winterland Concessions Co., d/b/a Winterland Productions; Big Geoff Overseas, Ltd.; Big Step Productions, Inc.; Boy Toy, Inc.; Bustin' Productions, Inc. and FYC Tours, Inc. also recover of defendant Peter A. Fenton the sum of Forty–Three Thousand Five Hundred Dollars ($43,500.00) in punitive damages, with interest thereon at the rate provided by law.

15. That plaintiffs Winterland Concessions Co., d/b/a Winterland Productions; Big Geoff Overseas, Ltd.; Big Step Productions, Inc.; Boy Toy, Inc.; Bustin' Productions, Inc. and FYC Tours, Inc. also recover of defendant Rathglade Limited the sum of Forty–Three Thousand Five Hundred Dollars ($43,500.00) in punitive damages, with interest thereon at the rate provided by law.

The court FURTHER ORDERS that defendants Peter Fenton and Rathglade Limited doing business as Atalanta West, Atalanta Press and Culture Shock, their officers, agents and employees, and anyone acting on their behalf, directly or indirectly, be and are permanently ENJOINED and RESTRAINED from (a) manufacturing, advertising, distributing, selling, or otherwise commercially exploiting any posters, poster-books, calendars or other merchandise bearing the names, likenesses, symbols, logos, photographic images, trademarks, service marks, or other indicia of the music groups Madonna, The New Kids on the Block, George Michael, Hammer, and The Fine Young Cannibals, without the express prior written consent of the music groups and individual performers thereof, or their authorized business entities or pursuant to an authorized license derived from them and (b) from disposing, encumbering, managing, hypothecating, selling or transferring any of defendants' assets located within the United States, including but not limited to improved real property in the County of Los Angeles, State of California, commonly known as 1131 Alta Loma Road, Unit 521, until this judgment has been satisfied.

The bond hitherto posted by plaintiffs as a condition of the issuance of the preliminary injunction be and is hereby exonerated.

There being no just reason for delay it is directed that final judgment be entered.

IT IS SO ORDERED.