**SYGMA PHOTO NEWS, INC.,** Plaintiff,

v.

**HIGH SOCIETY MAGAZINE, INC.,**
**Drake Publishers, Inc. and Dorjam**
**Publications, Inc.,** Defendants.

No. 83 Civ. 7517 (RWS).

United States District Court,
S.D. New York.

Feb. 5, 1985.

Ben C. Friedman, P.C., New York City, for plaintiff; Ben C. Friedman, New York City, of counsel.

Abelman, Frayne, Rezac & Schwab, New York City, for defendants; Norman S. Beier, New York City, of counsel.

## OPINION

SWEET, District Judge.

Summary judgment has been entered against the defendants Dorjam Publications, Inc. ("Dorjam") and Drake Publishers, Inc. ("Drake") as infringers of the copyright of a photograph of Raquel Welch (the "Photograph") owned by plaintiff Sygma Photo News, Inc. ("Sygma"). The facts relating to the controversy are set forth in the opinions of this court of April 30 and September 27, 1984 and in the stipulation between the parties dated November 15, 1984. What remains is the calculation of damages to be awarded to Sygma. An award of $59,283.00 results from the following findings and conclusions.

Since no claim is being made under Section 504(b) of the Copyright Act of 1976 (17 U.S.C. 504(b)) for actual damages, the relevant language of the section is as follows:

> The copyright owner is entitled to recover ... any profits of the infringer that are attributable to the infringement ... In establishing the infringer's profits, the copyright owner is required to present proof of the infringer's gross

revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. Under this scheme, once gross revenues from the infringing work are established, the burden rests upon the infringer to prove those expenses that should be deducted to establish profit. 17 U.S.C. 504(b); *Lottie Joplin Thomas Trust v. Crown Publishers*, 592 F.2d 651 (2d Cir. 1978); *Aitken, Hazen, Hoffman v. Empire Const. Co.*, 542 F.Supp. 252 (D.Neb.1982).

The parties do not dispute Dorjam's gross revenues of $340,661.00 resulting from the sale of 52% of the printed copies of the February, 1983 issue of "High Society's Celebrity Skin." There is also no disagreement that the prior issue of the magazine had been published in November 1981 and the subsequent issue was published in October 1984.

Expenses of $51,288.00, including salaries, editorial costs, freight and transportation, and other miscellaneous expenditures are agreed upon deductions from revenues.

■ The parties stipulate that printing, laminating, wrapping and binding expenses totalled $165,070.00. According to Sygma, however, only 52% of that amount is properly deductible on the theory that only expenses attributable to the copies sold may be deducted. According to Dorjam, all expenses relating to the issue are deductible in view of the recognized trade practice of printing excess copies in the expectation that unsold copies will be returned, a practice followed here with respect to all unsold copies. In my view, generally accepted trade practices should prevail and all printing and related expenses are deductible.

■ The sum of $42,882.00 was paid for "separations" of which $1,280.00 was attributable to the cover using the infringed, and impressive, photograph of Ms. Welch. Sygma urges the inequity of permitting the infringer to deduct expenses in any way related to the photograph, as opposed to those expenses attributable to the entire issue. However, the statute speaks in terms of profits, and if the infringement consisted of simply the use of the Photograph alone, the expenses for acquiring, reproducing, and selling the Photograph would still serve to reduce the infringer's profit. Consequently, the entire $42,882.00 is deductible from the gross revenue.

■ The "retouching" expenses of $20,-266.00, however, stand on a different footing. Retouching of the Photograph was necessary to conceal the infringement, and retouching of the Photograph was therefore not. an expense in the regular course of conventional business. Further, there is no way of determining what portion of the $20,266.00 was attributable to retouching the Photograph. The stipulation provides that "it is impossible based on defendants' record to give a precise amount." The defendant has therefore not carried his burden of proof with respect to those retouching expenses not attributable to the Photograph. The $20,266.00 is not deductible.

Dorjam also fails to establish that the $22,873.00 paid for photographs is related to the infringing publication. The best that can be claimed is that 50–75% of the photographs purchased as a general practice were used in a particular issue. In my view that fails to meet the infringer's burden to establish the costs for the issue in question, and therefore the $22,873.00 for the photographs is not deductible.

■ The direct payments to the vicarious infringer, Drake, for type, stats, art supplies and royalties, in the amount of $2,377.00, are deductible. The overhead expenses of depreciation, rent, and legal fees, however, are not established to have been properly allocated to the issue containing the Photograph and are not therefore deductible. Although general overhead expenses may be deducted, *see Aitkin, supra; Wilkie v. Santly Bros.*, 139 F.2d 264, 265 (2d Cir.1943), "the burden is upon the defendant infringer to prove the actual expenditures for ordinary overhead and a fair method of allocating the overhead to the particular infringing activity."

*Aitkins, supra,* at 264. This burden has not been met.

■ Therefore, the profit achieved by Dorjam is $79,044.00. It is necessary to determine what portion of the profit is allocable to the cover, that is, the Photograph. Upon review of the expert deposition testimony submitted, I conclude that 75% of the sales were attributable to the Photograph. I reach this conclusion based on the nature of the Photograph, the reputation and fame of Ms. Welch, the absence of any established readership for the publication and its intermittent publication schedule.

Determining the precise impact of a magazine cover on the sales of that magazine is necessarily an imprecise venture. *See* Expert Transcripts at 81–82; 117–119; 173–74; 242–44. Where the reputation of the magazine plays only a small role in promoting circulation, such as here, however, the impulse nature of a purchase of this sort is accentuated. In *Playboy Enterprises, Inc. v. Chuckleberry Pub.,* 486 F.Supp. 414 (S.D.N.Y.1980) the Court, relying on the testimony of Ronald Scott, a magazine publishing consultant, held that "[c]overs are designed to attract a consumer's attention. The consumer looks first at the subject on the cover, then to the cover lines, and then, in the case of a sex-oriented magazine, to the center or centerfold if one exists. The decision to buy or not is then made as an emotional response, usually in a matter of seconds." *Id.* at 427. Given all these factors, I find that 75% of sales were attributable to the cover photograph.

Judgment will be entered in the amount of $59,283.00.

IT IS SO ORDERED.